# KNIGHTS OF PYTHIAS *v.* KALINSKI.[1]

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 268.    Argued May 1, 1896. — Decided May 18, 1896.

A society extending throughout the country, which was divided into lodges, whose members were subject to an annual lodge assessment and had also the right to become members of a separate assessable organization, within the society, called the endowment fund, having had some differences with a member who had paid all his endowment assessments but was in arrear for his dues to his lodge, the supreme head, (called the board of control,) after careful consideration, decided that in view of the fact that the keeper of records and seals of the lodge to which he belonged failed to notify the section of which he was a member of the fact that he was in arrears for dues to his lodge and that the lodge had failed to suspend him in accordance with the law, and that his section of the endowment rank had received his monthly assessments up to the date of his death, the endowment rank was liable for the full amount of the endowment. *Held*, that while the courts are not bound by this construction of the organization, the association has no right to complain if its certificate holders act upon such interpretation, and is not in a position to claim that the ruling was more liberal than the facts of the case or a proper construction of the rules would warrant; and that whether the ruling was right or wrong it established a course of business on the part of the society, upon which its certificate holders had a right to rely.

The continued receipt of assessments upon an endowment certificate up to the day of the holder's death is, under the circumstances of this case, a waiver of any technical forfeiture by reason of non-payment of lodge dues.

---

[1] The docket title of this case is "The Supreme Lodge Knights of Pythias of the World, plaintiff in error, *v.* Mrs. Eugenie Kalinski."

THIS was an action originally begun in the Civil District Court of the parish of Orleans, in the State of Louisiana, by the defendant in error, Eugenie Kalinski, to recover of the Supreme Lodge Knights of Pythias of the World, an association incorporated under an act of Congress, and domiciled in Washington, the amount of a certain certificate of membership, whereby the defendant contracted and bound itself to pay to petitioner on the death of her husband, Achille Kalinski, the sum of $3000 — the said certificate being in effect a life insurance policy.

The case was removed, upon the petition of the defendant, to the Circuit Court of the United States for the Eastern District of Louisiana, upon an allegation that the defendant was created by and organized under an act of Congress, approved May 5, 1870 ; that it was domiciled in Washington, and that the controversy arose under and was to be determined by such act of Congress; that the suit was based upon a beneficial or life certificate issued under authority of such act of Congress, and the defence to said suit arose under the laws of the United States.

The answer admitted that during his lifetime the said Achille Kalinski became a member of the endowment rank of the order of Knights of Pythias, in section 363 thereof, paid the initiation fee, and that there was issued to him the certificate mentioned in the petition. But it denied that Kalinski, during his lifetime, complied with the obligations imposed upon him under such certificate, and averred that, under the terms of his application for membership in said endowment rank, and in the said certificate, and the constitution and by-laws of said endowment rank Knights of Pythias of the World, all being and forming parts of the contracts between them, it was provided that any failure or neglect on the part of said Kalinski to pay assessments or dues, as provided by the laws of the rank or order, should work a forfeiture of all his rights and the rights of his heirs and beneficiaries, in the premises, to all benefits and privileges accruing to members of said rank. That by said laws it was, among other things, especially provided that when a member of the endowment rank became in

arrears to his lodge, for an amount equal to one year's dues, he should forfeit his membership in the endowment rank, and his endowment certificate should thereupon become void.

The answer further averred that, at the time of his death, May 24, 1891, Kalinski was in arrears for, owed and was indebted to Syracuse Lodge, No. 50, of said order, of which he was a member, or to which he belonged, in an amount in excess of one year's dues, and that he had, at the time of his death, forfeited his membership in the said section and rank, and the said certificate became null and void. It further averred that, after being so in arrears, and the forfeiture of all rights as aforesaid, of which forfeiture, however, your respondent was then, without its fault or negligence, unaware, said Kalinski paid certain assessments under such certificate; but that, as soon as made aware of the forfeiture, heretofore mentioned, respondent made legal tender to the plaintiff of the amount of such assessments so paid, and that she refused the same.

In a supplemental answer defendant deposited in court and tendered back to plaintiff the amount of assessments so paid, namely, $16.20, with 5 per cent interest thereon from April 1, 1891, to date.

The case came on for trial before the District Judge and a jury, was tried twice, and resulted each time in a verdict and judgment for plaintiff for the full amount of her certificate or policy, and upon writ of error to the Circuit Court of Appeals that judgment was affirmed. Whereupon defendant sued a writ of error from this court.

*Mr. J. Z. Spearing* for plaintiff in error. *Mr. C. S. Rice* was on his brief.

*Mr. M. Marks* for defendant in error. *Mr. William Armstrong* was on his brief.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

It seems that during his lifetime Achille Kalinski became

a member of section 363 of what is termed the endowment rank of the Knights of Pythias, paid his admission fee, and in consideration thereof, and in compliance with a written application made by him, the defendant, the supreme lodge of the order, issued to him a certificate which is in substance a policy of life insurance, wherein it was certified that Kalinski was a member in good standing in the endowment rank, and in consideration of the representations made in his application, which was made a part of the contract, and the payment of the prescribed admission fee, and in consideration of the payment thereafter to said endowment rank of all assessments as required, and "*the full compliance with all the laws governing this rank now in force or that may hereafter be enacted*, and shall be in good standing under said laws," the sum of $3000 will be paid, etc., to Eugenie Kalinski, his wife, etc. "And it is understood and agreed that any violation of the within-mentioned conditions, or the requirements of the laws in force governing this rank, shall render the certificate and all claims null and void, and that the said supreme lodge shall not be liable for the above sum, or any part thereof." In his application Kalinski agreed that he would punctually pay all dues and assessments for which he might become liable, and would be governed, "and this contract shall be controlled by all the laws, rules and regulations of the order governing this rank now in force or that may hereafter be enacted, or submit to the penalties therein contained." One of the laws and regulations adopted by the board of control was that "when a member of the endowment rank becomes in arrears to his lodge for an amount equal to one year's dues he shall forfeit his membership in the section and said rank, and render void his endowment certificate."

It further appeared that Kalinski was a member of Syracuse Lodge, No. 50, and that the books of said lodge, which were produced in evidence, showed that he was indebted to the lodge on the 31st day of March, 1891, and at the date of his death, May 24, 1891, in the sum of $12.50, for dues owing by him to his said lodge, under a by-law, which said sum was in excess of one year's dues he was required to pay, but that

he had not been suspended by his lodge for that reason before his death, under the provisions of sec. 5 of article 16 of the constitution of the lodge, and sec. 3 of article 14 of the by-laws, although he had received notice from the proper officer of the lodge to pay the same, and had been told to pay the same *before the next meeting of the lodge,* but that he died *before such meeting* without having paid the same.

It further appeared, and was not disputed, that the keeper of the records and seal of Syracuse Lodge, No. 50, had under sec. 6, article 4 of the constitution of the lodge, failed to notify the section of the endowment rank to which Kalinski belonged that he was in arrears, and. that the assessments due by Kalinski to the endowment rank were received in ignorance of the fact that he was so in arrears, and had been tendered back after his death, and several months subsequent to the application of his widow for payment of the policy. In this connection the defendant requested the court to charge the jury as follows: "If you find that Kalinski was in arrears and indebted to his lodge for dues at the date of his death in an amount equal in amount to one year's dues, you must find as a conclusion from the fact that he had forfeited his membership in the endowment rank, and that the plaintiff is not entitled to recover in this suit. And the receipt of assessments by the officers of said endowment rank (which dues it is admitted have been tendered back, as hereinbefore set forth) previous thereto, if in ignorance of the fact that he was so in arrears, was not a waiver of said forfeiture."

But the court refused to give the charge as requested, and in lieu thereof charged the jury as follows:

" As to the construction of the meaning as matter of law, of the fundamental law, and of the orders of defendants' organizations, I adopt the views of the board of control of the defendants' orders in case of John A. Manikheim, and I instruct the jury that if the jury finds as a fact that the keeper of records and seal of the order to which Mr. Kalinski belonged failed to notify the section of which he was a member of the fact that he was in arrears for dues to said lodge, and also that said lodge failed to suspend Mr. Kalinski in accordance with law,

and also the section of the endowment rank had received the monthly assessments of said Kalinski up to the date of his death, then the verdict will be for the plaintiff and against the defendant for the sum of $3000, with interest from judicial demand."

From a comparison of the instruction as requested with that as given, it is apparent that the case turns upon the question whether the mere non-payment of lodge dues was sufficient to work a forfeiture of the certificate in view of the fact that the insured kept up his assessment, which the supreme lodge received without inquiring whether the insured was indebted for his lodge dues or not. Broadly construed, the application required that the contract should be controlled by the laws, rules and regulations of the order governing the rank. The certificate also required "a full compliance with all the laws governing this rank now in force or that may hereafter be enacted," and that the insured should be in good standing under said laws. What other laws governing this rank must have been complied with to prevent a forfeiture of the insurance does not appear; but if the application and certificate be literally construed, it is evident that a breach of any one of the regulations governing the rank, however numerous or unimportant they may have been, or a failure of the insured to remain in good standing under the laws of the order, which certainly opens a wide door to differences of opinion, could be seized upon as an excuse for non-payment.

It will be observed, however, that the endowment rank or insurance feature of this order was in reality a separate scheme, and had no other apparent connection with the order than in the fact that no one who was not a member of the order could become a member of the endowment rank. Entirely separate accounts were kept with each member, as belonging to the lodge, and as a member of the endowment rank or policy holder. The fees that were due to the lodge as a condition of membership in it do not seem to have formed any part of the consideration for the certificate or policy, which consideration consisted of certain assessments, that appear in this case to have been promptly paid. The provision that the

applicant should comply fully with all the laws governing the endowment rank then in force, or which might thereafter be enacted, and should also maintain a good standing under such laws, is one of a very elastic nature, and one which could not be fully complied with without a thorough knowledge of such laws, and of the requisites of good membership. In this case it is alleged to have been violated by the fact that on March 31, Kalinski became indebted to the lodge of which he was a member in the sum of $12.50, which was an amount in excess of one year's dues. His attention was called to this by the proper officer of the lodge, who told him to pay the sum before the next meeting of the lodge. He died, however, on May 24th, and before such meeting was held, leaving this amount unpaid. It might be argued with great plausibility that, in view of the fact that the officers of the lodge told him· to pay before the next lodge meeting, the defendant was bound thereby, and must have been held to waive its right to a prompt payment of the lodge dues, and that as Kalinski died before the time allowed had expired, he was not even technically in fault.

But, however, this may be, the officials of the order appear to have been guilty of delinquencies of their own, which ought to estop them from insisting upon the failure of Kalinski to comply with the letter of his agreement to abide by the laws and regulations of the rank. Under the laws, rules and regulations for the government of sections of the endowment rank, it was the duty of the secretary of each section to keep a financial account with each member of the section, and in January of each year to furnish to the master of finance of the lodge to which the members of the section belonged, a list of the names of such members, and to request the officer to promptly inform him whenever a member on said list became in arrears for an amount equal to one year's dues. It was also the duty of the master of finance of Syracuse Lodge, No. 50, to notify in writing all members who were about to become in arrears, and to again notify them on the eve of suspension. It was also his duty to notify his lodge when a member owed to the amount of

twelve months' dues, or its equivalent, after which notification it became the duty of the chancellor commander to suspend him in open lodge, and to keep a record of the same in the minutes. It seems to have been also the duty of the keeper of records and seal of each lodge to notify the proper section of the endowment rank, whenever a member became in arrears for dues to the lodge, when, and not until then, the certificate of membership in the endowment rank became the subject of forfeiture. Indeed, the failure to do this, and the continued receipt of the monthly assessments upon the policy of endowment, appear to have been treated by the board of control as a waiver of the right to insist upon the forfeiture of the certificate or policy.

By the constitution of the endowment rank, the entire charge and full control was put in a board of control, which had power to hear and determine all appeals, their findings being final unless reversed by the supreme lodge in session. They also had authority to enact general laws, rules and regulations, in conformity with the constitution, for the government of sections and the membership of the endowment rank, and to alter and amend such laws at their discretion. It seems that, in the case of Manikheim, a member of the endowment rank at Washington, the board of control was called upon, in 1887, to give a construction to the rules and regulations of the endowment rank, upon a state of facts similar in all respects to the facts in this case. From the journal of the supreme lodge, which was put in evidence in this case, it appeared that, at the time of his death, Manikheim was in arrears to his lodge for one year's dues, but had paid all his assessments to his section of the endowment rank.

Upon receipt of this information the supreme secretary refused to furnish a blank proof of death, and instructed the secretary of said section to return to the beneficiaries the monthly assessments, which were erroneously collected from said Manikheim. This was refused by the beneficiaries, who demanded payment in full of the certificate of membership.

Upon the matter being laid before the board of control, it decided, after a very careful consideration of the facts in the

case, that in view of the fact that the keeper of records and seal of the lodge to which Manikheim belonged failed to notify the section of which he was a member of the fact that he was in arrears for dues to his lodge, and that the lodge had failed to suspend him in accordance with the law, and that his section of the endowment rank had received his monthly assessments up to the date of his death, the endowment rank was liable for the full amount of the endowment, and the supreme secretary was instructed to pay the beneficiaries the amount due.

In compliance with this ruling, the supreme chancellor of the order appears to have issued a circular letter to the subordinate chancellors to the effect that, in order to carry out the provisions of the law that " when a member of the endowment rank becomes in arrears to his lodge on account of dues for more than six months" (changed from one year) " he shall forfeit his membership in the section and said rank, and render void the endowment certificate," it was necessary that the secretaries of the various sections of the endowment rank be duly notified when members of such rank became in arrears for dues to their respective lodges. . And he therefore requested the grand chancellors to instruct their subordinate lodges to forward to the secretary of such sections of the endowment rank as were tributary to their lodges, an official notice of the fact that any member was in arrears for dues, said notice of arrears to be signed by the master of finance and attested by the keeper of the records and seal, with the seal of the lodge attached. And to properly carry this into effect the secretaries of the various sections of the endowment rank were instructed to officially certify to the keeper of records and seal of the respective lodges, to which the members of a section belonged, a full and complete list of the members of said section, etc.

While it is entirely true, as claimed by the plaintiff in error, that this was *res inter alios acta,* and, therefore, not available by way of estoppel, it is none the less true that it was an interpretation put by the supreme authority of the order upon their somewhat ambiguous and complicated system of rules and regulations, and that it would be unjust to the board of control to assume that Kalinski, who was an ordinary member

of the endowment rank and apparently an unlearned man, was wiser than they, and was bound to put a construction upon these regulations more unfavorable to himself than the board of control had construed them.  Upon the contrary, we think that the certificate holders were entitled to rely upon the construction given to these rules and regulations by the highest tribunal of the order, and to presume that the supreme lodge would not enforce a forfeiture under circumstances which the board of control had held did not create one.  Although we would not be understood as saying that we should feel bound by the construction put upon the rules and regulations of a private order by the board of control or supreme council of such order, we think that the association has no right to complain if its certificate holders act upon such interpretation, and that it is not in a position to claim that this ruling in their favor was more liberal than the facts of the case or a proper construction of these rules would warrant.  Whether the decision were right or wrong it established a course of business on the part of the defendant, upon which its certificate holders had a right to rely.  *Insurance Co.* v. *Eggleston,* 96 U. S. 572.

Aside from this, however, we think the continued receipt of assessments upon Kalinski's certificate up to the day of his death was a waiver of any technical forfeiture of the certificate by reason of the non-payment of the lodge dues.  Granting that the continued receipt of premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company, *Insurance Co.* v. *Wolff,* 95 U. S. 326; *Bennecke* v. *Insurance Co.,* 105 U. S. 355, this is true only of such facts as are peculiarly within the knowledge of the assured.  If the company ought to have known of the facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse.  In the ordinary course of business between the lodges and the sections of the endowment rank, and under the instructions contained in the circular of the supreme chancellor of May 20, 1887, it became the duty of the keeper of the records and seal

of the lodge to which Kalinski belonged to notify the secretary of the proper section of the endowment rank of the fact that he was in arrears for dues, and his failure to do this should be imputed to the defendant, as representing the order, rather than to Kalinski. It is more than possible that, as the endowment rank was a separate and distinct feature from the lodges, Kalinski was wholly ignorant of the fact that a failure to pay his lodge dues promptly forfeited his certificate; and while, as matter of law, he might be chargeable with notice of this fact, his beneficiary has a perfect right to insist that the defendant was guilty of a technical dereliction of its own duty in the premises. The defence in any aspect does not commend itself highly to one's sense of natural justice, and, for the reasons above stated, we are of the opinion that the decision of the court below was right, and it is, therefore,

*Affirmed.*