**BANKERS LIFE CO. OF DES MOINES, IOWA, v. SONE et al.**

No. 7964.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1936.

Frank G. Dyer, of Houston, Tex., for appellant.

Ralph R. Wood and Willard L. Russell, both of Houston, Tex., for appellees.

Before SIBLEY and HOLMES, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Bankers Life Company brought a bill in the District Court against Albert W. Sone and his wife Anne L. Sone to cancel a policy of life and disability insurance issued to Sone on May 8, 1933, in which the wife was beneficiary, principally on the ground that the application stipulated that no liability should be incurred under the policy until delivered to the insured and paid for by him during his lifetime and good health, and that he was not then or since in good health but was suffering with syphilis. The respondents by cross-bill sought a decree establishing the policy because the insurer knew or was put on enquiry as to the truth when it issued the policy, and especially when it received the second premium on Dec. 8, 1933, and waived any right to repudiate the policy on such ground, and sought a recovery of disability benefits because of a nervous breakdown of the insured in August, 1933, which resulted in his insanity. The insured was represented by guardian ad litem. On evidence which is in no serious conflict the court made findings of fact and entered a decree setting up the policy and ordering payment of the disability benefits. The insurer's appeal attacks both conclusions.

The application is attached to and made a part of the policy. It represents that the

statements and answers in the accompanying medical examination are true and complete and agrees that if policy be issued the company shall incur no liability until it is delivered to applicant and paid for during his lifetime and good health. There are statements that applicant is in good health but was receiving compensation from the United States for partial loss of vision in one eye; he had had a blood test which was negative; he had had no accident or injury; had never had syphilis; operation of tonsillectomy in 1932. The company had their medical examiner take a test of the vision and make inquiry as to the cause of its loss, he reporting a serious lack in one eye and that the cause was unknown, and gave address of physician who had handled the case and made the blood test. The company made no further investigation, but granted the life insurance at the usual rate but doubling the rate for the double indemnity for death by accident and for disability benefits because of the bad eye. The policy was accepted May 20, 1933, by insured. In August, 1933, he had to resign his position as a school superintendent because of a nervous breakdown. The company learned of this and was advised by his physician that it might be due to work and worry on account of sickness in the family, or the beginning of general paresis. The company then suspected syphilis and attempted further inquiries but without communicating with the insured. The information gotten was inconclusive and on September 28th it wrote its local medical correspondent: "In view of the report you have given us we are allowing Mr. Sone's policy to remain in force but shall of course inquire carefully into his case if he should lapse and request reinstatement." On November 4th Sone was put in a United States veterans' hospital and his then complete mental disability was diagnosed positively as general paresis due to an old syphilis, and the evidence is positive that the syphilis must have antedated May 8, 1933. The company however had suspended its inquiries and did not at once learn this. The policy did not lapse for the beneficiary paid the premium on December 8th and the company retained it. After Sone's disability had continued six months so as to enable a claim to be made for it under the policy, she filed one, and it was rejected, the company writing on July 14, 1934, that it refused to be bound by the contract and had instructed a suit to be filed for its cancellation. The suit was filed the following month, tendering return of all premiums paid.

The agreement that no liability shall be incurred under a policy until delivered to the insured while in good health is a valid one and not contrary to the insurance statutes of Texas. The insured's ignorance of his disease does not validate the policy. Wright v. Federal Life Ins. Co. (Tex.Com. App.) 248 S.W. 325; Southern Surety Co. v. Benton (Tex.Com.App.) 280 S.W. 551. See, also, Person v. Ætna Life Ins. Co. (C. C.A.) 32 F.(2d) 459, and New York Life Ins. Co. v. Wertheimer (D.C.) 272 F. 730. The District Court found that Sone was not in good health but had syphilis when the policy was issued and delivered, but that he did not know it, and that his answers in his medical examination were bona fide, but that from them the insurance company knew or was so put on inquiry that it was bound to know that his failing sight, not being due to accident or injury, was due to disease, probably syphilis, and because of this knowledge, actual or imputed, there was a waiver of that agreement or an election to insure notwithstanding. The finding of Sone's ignorance and good faith is well supported, but we do not agree that the company knew that Sone was not in good health or suspected that he was not. The evidence shows that eyesight may fail because of syphilis or other serious infection, but not that such things are the only causes. In view of Sone's statements that he was in good health, that he had never had syphilis, and that a blood test had been negative, we think the company could reasonably insure him as in good health. The evidence is express that the company would not have insured one afflicted with syphilis, and that the premium so far as it was for the life insurance was at the usual rate for good health risks, and so far as for accidental death and disability was increased only because of the greater danger of accident to a man of bad eyesight. We do not find a sufficient basis in the facts to show a waiver at the inception of the insurance contract of the term of it under discussion. But we agree with the trial court that a waiver or estoppel arose from the receipt of the premium in the following December under the circumstances that then existed. Sone's mental health had failed in addition to the trouble with his eye. An attending physician had advised the company that his condition might be due to paresis. The company suspected syphilis, necessarily of long

standing to ripen into paresis. It began inquiry but suspended it deliberately to see if the insurance would be allowed to lapse at the next premium date. Before that time Sone was insane, and the cause of his trouble known and knowable to the company. It could not refuse to find out the truth, and be as though there had been no suspicion or information. It had to decide whether the policy was of no force and refuse to go further with it, or to accept the premium and go on. It did the latter. If it had known the full facts, the waiver or estoppel would be plain. A determination not to inquire will in a court of equity charge one with the knowledge that inquiry would have brought forth. The company waited till July 14, 1934, before disavowing the policy. Compare Holman v. Gulf Ref. Co. (C.C.A.) 76 F.(2d) 94. We think the policy was confirmed by the company's acceptance of the second premium. Supreme Lodge v. Kalinski, 163 U.S. 289, 16 S.Ct. 1047, 41 L.Ed. 163.

■ But it was confirmed as written. The estoppel goes no further than to prevent a denial that the policy is in force. We do not think that its ratification widens its coverage. Palumbo v. Met. Life Ins. Co. (Mass.) 199 N.E. 335; Dees v. Natl. Casualty Co., 17 Tenn.App. 183, 66 S.W.(2d) 603. Provisions have been held waived in some state courts by the acceptance of first or subsequent premiums when such facts existed and were known to the company as rendered the policy wholly inoperative under those provisions, on the ground that it cannot be supposed that it intended to take the money for nothing.[1] But that is not the situation here on the point now under discussion, because the policy might operate to insure against death from any cause including syphilis and against disability from all causes other than the syphilis known to exist at its issuance. The policy provisions as to disability are not inconsistent with such knowledge, although they do exclude from the insurance disability from a disease originating before the policy takes effect, whether known or unknown. "The Bankers Life Company agrees that if, while this agreement is in force, the insured becomes totally disabled by reason of bodily injury or disease originating after the date hereof, and is thereby wholly and continuously prevented from performing any work or engaging in any occupation whatsoever for remuneration or profit and the insured has been so disabled continuously for a period of not less than six months" certain benefits will follow. It is not denied that the disease which was causing Sone's disability originated not after but before the date of the policy. Had the existence of the latent disease been known when the policy was taken or when the December premium was paid, the policy could have operation in a wide field both as to death and disability, although disability from the pre-existing syphilis was not insured against. Even now the insurance against death can be continued by payment of premiums (supposing that the policy has not lapsed) without committing the company to liability for a disability not covered.

■ Nor do we think that increasing the lump premium because of the defective eye and the increased risk of accident due to that extended the disability insurance to cover the unknown cause of the eye trouble and a disability by reason of it arising not from a loss of eyesight but a loss of mind. It is well known that a partly blind person is more liable to accidents which might cause death or disability than is a person with good eyes, and it was reasonable to agree on a higher premium for that increased risk. But, as the policy was worded, it remained as true as though the premium had not been increased that injury and disease causing disability must originate after the date of the policy to come within its coverage. A disability by reason of then existent syphilis and not due to defective eyesight is not covered nor intended to be.

Mrs. Sone can by paying the premiums maintain the life insurance. Perhaps the company's repudiation of the policy in July, 1934, has excused prompt payment of them since that date. But she is not entitled to the disability benefits decreed to her. The decree is set aside and the cause remanded, with direction to enter a decree establishing the policy but denying disability benefits, with costs to the defendants on the original bill and to the petitioner on the cross-bill. The appellant recovers costs of this appeal.

Judgment reversed. .

---

[1] The federal courts enforce the policy as written unless reformed for accident, mistake or fraud. Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S.Ct. 133, 46 L.Ed. 213, and cases following it.