Estelle R. WEBER, Plaintiff-Respondent,

v.

UNION LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 31817.

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Rehearing Denied Sept. 8, 1965.
Application to Transfer Denied
Nov. 8, 1965.

Max Sigoloff, St. Louis, for defendant-appellant.

John D. Schneider, St. Louis, for plaintiff-respondent.

ANDERSON, Judge.

This is an action on an accident and health insurance policy for total disability caused by sickness. The case was tried to the Court and resulted in a decision in favor of plaintiff. Defendant has appealed.

The answer denied liability on the ground of misrepresentations, and on the further ground that under the terms of the policy plaintiff was not entitled to recover because the illness for which she sought indemnity did not commence more than thirty days after the date of the policy, a condition of liability specified in said policy.

The facts show that there was no medical examination of the insured when the policy was taken out, but that one Kronan, an agent of defendant took insured's application for the policy at insured's home on May 3, 1961. Kronan was an agent for the purpose of soliciting insurance applications to submit to the defendant. It necessarily follows that he had authority to receive information called for in the application, and in doing so was acting within the scope of his authority as an agent.

The provisions of the policy with reference to benefits for sickness and total disability therefrom are as follows:

"'Sickness' as used in this policy means sickness or disease contracted and commencing more than thirty days after the date of this policy and causing loss commencing while this policy is in force.

\*      \*      \*      \*      \*      \*

"Part VIII

"If such sickness shall cause the Insured to be totally disabled continuous-

ly for one day or more, and requires regular treatments by a licensed physician, the Company will pay, commencing with the date of the first visit, benefits at the rate of the Monthly Indemnity so long as such sickness causes total disability and necessitates total loss of time, but in no event for a period in excess of twelve months.

"Part IX

"If such injury or sickness confines the Insured continuously within a recognized hospital for one day or more, the Company will pay, for the period of such hospital confinement in addition to any other benefits payable under this policy, benefits at the rate of one-half the Monthly Indemnity, but in no event for a period in excess of three months."

The principal sum provided in the policy is $1,000 and the monthly indemnity $60.00.

There was also the following provision in said policy:

" * * * No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval endorsed hereon."

The application contained the following:

"Do you apply to the Union Life Insurance Company, for policy Form No. N3 (6–54); and do you agree that this application shall not be binding upon the Company until issuance of the policy and the payment of the first premium? Yes.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"6. Have you ever made claim for or received indemnity on account of any injury or illness? Give name of company, dates, amounts and causes. 1958 Fully Recovered.

"7. Are your habits correct and temperate? Yes. Are you maimed or deformed? No. Have you any impairment of sight or hearing? No. Have you ever had a hernia? No. Is there any indication of ill health present? No. Are you in good health physically and mentally, to the best of your knowledge and information? Yes.

"8. Have you ever had any of the following diseases: * * * Diabetes? No. * * *.

"9. Have you received medical or surgical advice or treatment or had any disease within the past five years? Have you ever been operated on by a physician or surgeon? Answer as to each:
In _See Above_ For _See Above_ Lasting _See Above_
In _See Above_ For _See Above_ Lasting _See Above_

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"11. Do you hereby apply to the Union Life Insurance Company for a policy issued solely and entirely in reliance upon the written answers to the foregoing questions which you adopt as your own, represent to be true, full and complete, to the best of your knowledge and information? Yes."

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

The application was signed "Estelle R. Weber;" Kronan signed as a witness to said signature. Said application was dated May 3, 1961.

Plaintiff testified that on May 3, 1961, she was solicited for the policy in suit. The agent was with her for about an hour on that date. She stated that on that date she could see, but not very distinctly; that she could see a person, but could not read. She further testified that she told the agent she had bad eye sight and diabetes, that she signed the application but was unable to cross the "T" in her name; that she did not think she was able to find the "T" and asked the agent to cross the "T" for her. She further testified she gave the agent a check, the amount she did not remember, and thereafter received the policy of insurance. She also stated that at the time she was going to Dr. Hanser, and continued to see him after she received the policy; that on February 14, 1962, she went to the hospital where Dr. Hanser performed an operation on one eye; that after the operation she could not see out of the eye; that she was in the hospital twelve days.

Plaintiff further testified that prior to going to the hospital on February 14, 1962, she lived alone, and was able to take care of her personal needs around her apartment; but after leaving the hospital, she was unable to take care of herself, and has somebody living with her who does all her work—cooking and everything.

It was then stipulated that if Dr. Hanser was called as a witness he would testify as to the facts stated in a report contained in a letter addressed to plaintiff's counsel. Said letter was introduced into evidence by plaintiff, and is as follows:

"This patient (Estelle Weber) was first seen by us on April 11, 1961. At that time her vision with and without glasses was hand movements. There was no improvement possible with glasses due to severe diabetic retinopathy and massive hemorrhages both eyes. She had at the time and still has a considerable field defect. The pressure in the eye was normal at that time. We had followed her since then until January 17, 1962, when we found an elevated pressure in the left eye. This was diagnosed as hemorrhagic glaucoma left eye. She was placed on glaucoma medication and told to return in a few days. Upon her return a cyclodiathermy left eye was suggested. She was admitted to Lutheran Hospital February 14, 1962, and the surgery was performed February 15, 1962. Since that time it was suggested that the patient have the left eye removed but she would not go along with our suggestion. She has been followed since and has been on medication but the prognosis is not good. She will never gain vision due to the diabetic changes that have effected her vision.

"In my opinion this patient was in no condition to read or sign any document at that time and still is not capable.

"I hope this will be sufficient information and if not please feel free to contact us in regard to any matter in question."

Defendant offered no evidence. Thereafter the Court found for plaintiff, and entered judgment in her favor for $732.00 plus interest amounting to $84.00; the total judgment being $816.00.

The first point urged by appellant is that insured is not entitled to benefits for total disability for the reason that under the terms of the policy such benefits are not payable unless such disability is due to sickness commencing more than thirty days after the date of the policy.

Plaintiff's own evidence shows that she had been suffering from diabetes for some time prior to the date the policy was issued, which ailment had caused diabetic disease of the eye and massive hemorrhages in both eyes, which condition made it impossible for any improvement of her bad eyesight. Several months after the policy was issued, her doctor discovered elevated pressure in her left eye which he diagnosed as hemorrhagic glaucoma. The doctor sug-

gested that surgery be performed on the left eye, and on February 14, 1962, she was admitted to the hospital for that purpose. The operation was performed the next day. Since that time she has been unable to see, and by reason thereof has been totally disabled. Plaintiff's total disability was caused or contributed to by her diabetic condition; her own doctor's statement being that, "she will never gain vision due to the diabetic changes that have effected her vision." The total disability benefits, if allowable, amount to .$720 under Part VIII of the policy, and the hospitalization benefits for twelve days in the hospital amount to $12 under the terms of Part IX of the policy.

■ Respondent takes the position, first, that plaintiff's hospitalization and total disability was caused by hemorrhagic glaucoma, which developed more than thirty days after May 8, 1961, which date was thirty days after the issuance of the policy. It is true that Dr. Hanser first detected the symptoms of glaucoma on January 17, 1962, which was more than thirty days after the issuance of the policy, and that plaintiff thereafter was hospitalized and surgery was performed on her left eye in an attempt to relieve this condition. However, the Doctor stated that, "she will never gain vision due to the diabetic changes that have effected her vision." It thus appears from plaintiff's own evidence that her total disability was due to a diabetic disease which she admittedly had prior to the issuance of the policy. No other construction could be placed on Doctor Hanser's testimony. Therefore, we must rule the point against respondent.

■ Respondent's next point is that since the defendant's soliciting agent was informed by plaintiff of her condition, the defendant must be held to have waived the sound health condition of the policy, and any defense of misrepresentation. This is true; but does not dispose of the problem we are now dealing with. The point urged by appellant is one of coverage, and the law is firmly established that extension of coverage beyond the plain wording of the contract cannot result from waiver.

In Rosenberg v. General Accident Fire and Life Assurance Co., Mo.App., 246 S.W. 1009, the Court said, "'(t)here might be waiver of a forfeiture or a breach of contract, but waiver as a ground for extending the scope of a written contract beyond the usual and ordinary meaning of the language employed would be quite a novelty.'" The same rule was announced in Blanke-Baer Extract & Preserving Co. v. Ocean Accident & Guarantee Corporation, Mo.App., 96 S.W.2d 648, 1. c. 652.

■ In Fernan v. Prudential Insurance Co. of America, Mo.App., 162 S.W.2d 281, 1. c., we held that a contract of life insurance could not be created by waiver or estoppel, citing many Missouri cases so holding. By the same token, it follows that a contract of insurance could not be altered by such means. It would in effect be the substitution of one contract for another or the creation of a contract by waiver.

In 45 C.J.S. Insurance § 674a, page 616, it is said:

"As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded. As has sometimes been said, the doctrines of waiver or estoppel cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all, * * *."

Again at said section, page 619 of said volume, we find the following:

"The rule against extending the coverage of a policy by the doctrines of waiver or estoppel, considered supra subdivision a of this section, has been applied to health and accident insurance, and thus, under a policy insuring against disabilities arising after the date of the policy, the doctrines of waiver or estoppel have been held inapplicable so as to extend the risk to cover a disability arising prior thereto. * * *."

In support of the text are cited the following cases which are in point: Palumbo v. Metropolitan Life Insurance Co., 293 Mass. 35, 199 N.E. 335; Prudential Insurance Co. of America v. Brookman, 167 Md. 616, 175 A. 838; Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854; Bankers Life Ins. Co. of Des Moines, Iowa v. Sone, C.C.A.Tex., 86 F.2d 780.

▇ To apply the doctrine of waiver in the case at bar, would make the policy cover a loss not covered by its terms; to create a liability not created by the contract or assumed under the terms of the policy. In other words, to bring into existence a contract not made by the parties and create a liability contrary to the express provisions of the contract entered into by them. There was no express agreement to waive the thirty day provision. Nor was there any act of the defendant which would lead insured to believe that it was the intention of defendant to waive same, or conduct that would create an estoppel against defendant's reliance thereon. In fact it would be beyond the scope of the authority of the agent, a mere soliciting agent, to make such agreement or by his acts waive the terms of the contract. The waiver in this case goes no further than to prevent a denial that the policy is in force. The policy is, therefore, operative to insure against sickness or disability from all causes other than sickness or disability excluded by the thirty day provision. Since the glaucoma which caused plaintiff's hospitalization developed more than thirty days after the date of the policy, defendant is liable for hospital benefits under part IX of the policy. This amounts to the sum of $12.00. The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for plaintiff in the sum of $12.00.

RUDDY, P. J, and FRANK D. CONNETT, Jr., Special Judge, concur.