STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant.

No. WD 33380.

Missouri Court of Appeals, Western District.

Jan. 11, 1983.

William H. Sanders and Edward H. Sheppard, Kansas City (Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel), for appellant.

Edward W. Mullen and Derek E. Wood, Kansas City (Deacy & Deacy, Kansas City, of counsel), for respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

State Farm was successful in the trial court in seeking pro rata compensation from Hartford for $75,000 paid by State Farm in settlement of a claim for personal injuries against one Bates, its named insured, and for $3,593.45 for expenses and attorney fees on the theory that Hartford was a co-insurer of Bates under a policy issued to him. The trial court entered judgment against Hartford for $38,719.69 and post-judgment interest.

Hartford had issued an automobile insurance policy to Bates for one year beginning February 11, 1973, specifically covering a 1969 GMC pickup and a 1969 Cadillac. On October 1, 1973, Bates acquired a 1973 Lincoln Continental, and on October 9, 1973, he purchased an automobile insurance policy from State Farm, specifically describing it as the insured vehicle. Bates never informed Hartford until January 7, 1974, that he had purchased the Lincoln so as to cause it to come within the definition of "owned automobiles" in Hartford's policy, nor did the Lincoln replace either the pickup or the Cadillac. On November 26, 1973, while driving the Lincoln, Bates collided with a vehicle driven by Linda Rose Malone, who later died as a result of the collision. Bates reported the collision to State Farm, and Mrs. Malone's surviving spouse and minor children sued Bates for her wrongful death on December 19, 1973, and State Farm's present attorneys were employed to defend the suit. On January 7, 1974, when Bates first informed Hartford that he had purchased the Lincoln, he requested by letter that it be included in the policy so as to cover the collision of November 26, 1973, sending a copy of the letter to his agent, Rhodes Insurance Company of Lee's Summit. Hartford then wrote Rhodes that it was unable to add the Lincoln coverage for the November 26, 1973 accident because Bates had it insured with State Farm at that time, but it would be necessary to use the current date, January 7, 1974, in adding it to the policy. Rhodes then wrote Bates that the Lincoln would be added to Hartford's policy using the January 7, 1974 effective date, and requested further information as to whether it replaced covered vehicles or was a third car, its identification, and its use for driving to work.

On February 13, 1974, Mr. Vincent E. Baker, as co-counsel for plaintiffs Malone, wrote Hartford that they expected it to provide coverage and a defense for Bates in their suit. Hartford's claim supervisor replied informing Mr. Baker that if it were true that Bates had insured the vehicle involved in the Malone accident with State Farm that there would be no Hartford coverage thereon, and Bates should explain how he qualified for coverage. There is no evidence that either Bates or Mr. Baker took exception to Hartford's declination of coverage.

On February 23, 1974, State Farm's attorneys wrote Hartford's claim supervisor that they had seen the Hartford policy, and that it was their view that Hartford would be liable for its pro rata share of any judgment which might be entered against Bates, and for a pro rata share of attorney's fees and expenses incurred in the defense of the suit. On February 28, 1974, the supervisor wrote back, "The vehicle involved in the accident of November 26, 1973 was not insured under Mr. Bates's policy with Hartford Ins. Group. He acquired that vehicle and elected to have it covered with State Farm Insurance. Therefore, the vehicle would not qualify for coverage under the Hartford policy. This is quite clear when you read the terms and conditions of our policy." The supervisor also advised that he had written to Mr. Baker (Malone's attorney) that they could see no way that Bates qualified for coverage, and requested that if State Farm disagreed, to advise as to how Hartford's policy would be involved. State Farm responded by pointing out Paragraph 4(c)(2) of the policy defining "owned automobile" as being a newly acquired one provided, "1. it replaces an owned automobile as defined in (a) above, or 2. the company insures all private passenger * * * automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within

30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile * * *." [Note that Bates had notified Hartford of the acquisition on January 7, 1974, *within* the policy period, and requested that it cover the collision of November 26, 1973.]

State Farm contends that in relying on Paragraph 4(c)(2) above as a sole reason for denying coverage (until an amended answer was filed), Hartford waived the present defense and is estopped from asserting it as contained in Exclusion J which excludes coverage thus "the operation * * * of an automobile ownership of which is acquired by the named insured during the policy period * * *, if the named insured has purchased other automobile liability insurance applicable to such automobile for which a specific premium charge has been made."

Although it would appear that the substance of Exclusion J was stated to State Farm during the course of correspondence between the parties, it was never specifically referred to as "Exclusion J" or quoted. Nonetheless, the disposition of this appeal need not rest on that basis but upon the weight of authority that insurance coverage may not be *created* by waiver and estoppel.

In *Blew v. Conner,* 310 S.W.2d 294, 303[15, 16] (Mo.App.1958), a worker's compensation insurer issued a policy covering an Illinois business, but it did not provide compensation for claims brought under the Missouri Compensation law. It was claimed that the insurer was estopped to raise the defense of no coverage by having led claimant and his employer to believe there was coverage in taking over the investigation, serving as the employer's attorney and filing pleadings. The insurer claimed mistake in doing those acts, withdrew and denied coverage. The court said, "While waiver and estoppel may prevent an insurer from asserting a *defense* to coverage otherwise provided by an insurance policy our Missouri appellate courts so far as we have been able to ascertain have not yet permitted the use of either waiver or estoppel to establish coverage in the first instance where none

existed before." And at page 304, "Other Missouri cases and apparently well reasoned outstate authority indicate estoppel and waiver are not available to broaden the coverage to include that which is clearly not within the coverage of the policy or expressly excluded from coverage by its terms. * * * (Citing cases.)" In *Weber v. Union Life Insurance Company,* 394 S.W.2d 565 (Mo.App.1965), there was a provision in a policy that sickness meant sickness or disease commencing more than thirty days after the policy date, and plaintiff claimed it was waived because the agent was informed of her health condition prior to the issuance of the health policy. The court said, page 569[3, 4], "The point urged by appellant is one of coverage, and the law is firmly established that extension of coverage beyond the plain wording of the contract cannot result from waiver." (quoting also on that page, 45 C.J.S. Insurance § 674a, page 616). In *Martinelli v. Security Insurance Co. of New Haven,* 490 S.W.2d 427, 434 (Mo.App.1972), an exclusion of business pursuit coverage in a homeowner's policy was held not waived, and the insurer was not estopped to assert it, because, "The principles of estoppel cannot be used to protect the insured against certain risks which are expressly excluded." In *Associated Indemnity Corp. v. Miller-Campbell Co.,* 596 S.W.2d 383 (Mo. banc 1980), it was held that a policy coverage could not be extended by estoppel to cover a driver who was not a "rentee" within its terms. The thread of law which runs through all of the foregoing cases, and the cases cited therein, is that a coverage excluded, or not included, within the coverage insurance agreement may not be included upon the basis of waiver or estoppel for failure timely to assert that defense. The Blew case, supra, makes that clear.

State Farm's cited cases are distinguishable. In *State Farm Mutual Automobile Insurance Co. v. Central Surety & Insurance Corp.,* 405 S.W.2d 530 (Mo.App.1966), the automobile was a named vehicle in both insurers' policies, and the driver was driving with permission under State Farm's policy,

and was a named driver in Central's policy, which had no exclusion as to work-related driving. Central first defended on the ground that it was liable only after liability on State Farm's policy was exhausted, then "weakly" asserted, apparently for the first time on appeal, that the driver was not operating the vehicle on its insured's business—a defense *not* related to coverage under the insuring agreement by way of an exclusion. In *Kammeyer v. Concordia Telephone Co.,* 446 S.W.2d 486, 491 (Mo.App. 1969), it was held that a defense of exclusion that " 'this policy does not apply to liability assumed by the insured under any contract or agreement' " was an affirmative one which should have been raised in the trial court and which could not be raised for the first time on appeal. *Aetna Casualty & Surety Company v. Haas,* 422 S.W.2d 316, 321 (Mo.1968), involved a belatedly asserted second purported exclusion of a use of gas of any kind, by an exterminator, held to refer to rating classifications and *not* to modify the insuring agreement, the use of gas as an exclusion being not specifically mentioned anywhere else in the policy.

■ State Farm, however, urges that coverage existed on Bates' Lincoln for at least eight days, under the automatic coverage clause [4(c)(2) ] for newly acquired automobiles, and Exclusion J operated as a condition subsequent to terminate Hartford's existing automatic coverage, or a forfeiture of coverage upon the happening of the event of insuring the vehicle with State Farm, which clause may be waived. Cited and relied upon is *Missouri Managerial Corporation v. Pasqualino,* 323 S.W.2d 244 (Mo. App.1959). That case did not have a clause excluding coverage when an insured acquired insurance on a vehicle in another company. The gist of the opinion is that the insurer waived a forfeiture of coverage provision that the insured did not notify it, within 30 days as specified, of the acquisition of a replacement vehicle which was on May 8, 1955. A collision occurred on July 10, 1955. The insurer knew by September, 1955, that the vehicle replacement had been made. Suit against the insured was filed on November 2, 1955, who notified the insurer. Its representatives filed answer, took depositions, investigated the accident, had its doctors examine claimants, negotiated a settlement, refused to withdraw as defense attorneys, and after verdict filed a motion for new trial and argued it, and in no way disclaimed liability until February 13, 1956. These facts were held to create a waiver and estoppel against the insurer to insist upon the forfeiture of coverage as a defense. The court also noted that the insured was prejudiced (a "reliance" factor in estoppel) by the insurer's attitude in assuming the defense of the lawsuits. [Since Hartford denied its coverage from the start, no such facts of reliance on an undertaken defense by State Farm or Bates is present in this case.] The matter of non-reliance by an insured was considered in *Farmers Insurance Exchange v. Farm Bureau Mutual Insurance Co.,* 522 S.W.2d 779 (Mo. banc 1975). That case had in it the issue of forfeiture of policy coverage by an insured by her failure to pay a past due premium. A friend had sent in her premium conditioned upon whether she had obtained other coverage which she in fact did. The insurer returned the insurance premium, and the court held that it would not be estopped from asserting the conditional aspects of the premium payment, saying, "Finally, the evidence does not show that Mrs. Carty relied on the receipt to her detriment. She had not intended to renew the Farmers policy and had understood it would lapse for nonpayment of the premium." In this case the situation is similar. Bates, when asked on deposition why he insured the Lincoln with State Farm (on October 9, 1973), answered that he was tired of them [Hartford's agents] because of their treatment. State Farm, therefore, upon its theory that it stands in Bates' shoes on its subrogation claim against Hartford, takes those shoes with the fact of the absence of his reliance, to his detriment, upon any continued insurance coverage under the newly acquired vehicle clause of Hartford's policy.

The final consideration is as to what time Exclusion J was referrable. It must be as to the time of the collision which created

Bates' liability, and thus it is a condition precedent to a fixation of liability, i.e., that Bates had not, prior to that time, procured other insurance on the vehicle involved in the collision.

The judgment is reversed.

All concur.