**Geraldine LAWRENCE, Appellant,**

v.

**NEW YORK LIFE INSURANCE COMPANY, Respondent.**

**Nos. WD 33193, WD 33194.**

Missouri Court of Appeals,
Western District.

Feb. 1, 1983.

As Modified March 29, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 20, 1983.

Application to Transfer Denied
May 31, 1983.

William G. Beck, Field, Gentry, Benjamin & Robertson, Kansas City, for appellant.

William Ray Price, Jr., Alfred R. Hupp, Jr., Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, for respondent.

Before SOMERVILLE, C.J., and CLARK and MANFORD, JJ.

CLARK, Judge.

Appellant, the widow and insurance beneficiary of Kenneth E. Lawrence, made claim against New York Life Insurance Company for double indemnity benefits upon the death of her husband, the insured under two life policies written by the company. Payment of the principal policy sums was made, but the company deferred payment of the added benefits pending satisfactory proof that death was by accidental means as the policies required. After extended negotiations were unsuccessfully pursued, appellant commenced suit. A motion for summary judgment lodged by the company was sustained as to the claims under both policies, and this appeal followed.

The policies of life insurance here at issue were written upon the life of Kenneth Lawrence in the years 1941 and 1944. The first policy was in the principal sum of $5,000.00 and the second was for a face amount of $10,000.00. Each provided double indemnity benefits payable upon receipt of proof that death of the insured had resulted from bodily injury effected through external vio-

lent and accidental means. This benefit was limited, however, by the express exclusion of nine conditions under which a death, otherwise accidental, would not establish liability on the company for payment of the added sum. Among the conditions so stated was death of the insured resulting from the inhaling of gas, whether voluntary or otherwise. The following were the facts of Lawrence's death.

On November 27, 1978, appellant returned to the home she shared with her husband and found his body in his automobile in the garage. The body was clad in pajamas, and was partially within and partially outside the car. Doors to the car and to the garage were open. Kenneth Lawrence was declared to be dead upon arrival of the body at St. Luke's Hospital. The death certificate showed the immediate cause of death to have been carbon monoxide intoxication resulting from inhalation of automobile exhaust. The death certificate also noted the means of death to be undetermined.

Claim for benefits under the policies was made on March 1, 1979 supported by a copy of the death certificate. Prompt payment was made of the principal policy sums, but payment of the added benefit applicable where death is by accidental means was deferred pending investigation. After some time had passed, Mrs. Lawrence employed counsel, further documentation was furnished and several demands for payment were transmitted. Although no outright refusal to pay the added benefits was issued, payment was not forthcoming. The parties continue in disagreement as to the position actually taken by the company in response to the claim. The company contends it was prepared to act upon the claim at any time between March 1, 1979 and February 13, 1980 when suit was filed, but neither accepted nor denied liability because it was not given the means to complete its investigation. This argument evidently focused on a medical authorization requested but not supplied.

During this period of correspondence preceding suit, appellant contended the death certificate, the report of an autopsy performed on the body and the statement of the physician who attended the death, all furnished to the company by appellant, constituted sufficient documentation to process the claim. The request for a blanket medical authorization was refused on the ground that the extent of the authorization was overbroad, especially in view of the undisputed fact that death resulted from inhalation of automobile exhaust fumes.

A fair appraisal of the position taken by the company while the claim was under review before suit is that payment was withheld because the proof supplied was not adequate, in the opinion of the company, to classify the death as accidental. No mention whatever was made of the policy language which undertook to exclude from double indemnity coverage any death caused by inhalation of gas whether voluntary or otherwise. Because this restriction of coverage, if applicable, renders any consideration of other associated aspects of the death irrelevant, it can only be assumed this basis for rejecting the claim was not initially considered. At least in the exchange between the parties, it did not surface until raised in respondent's answer. The policy defense was, however, expressly presented at that time.

A summary judgment motion filed by respondent relied upon three grounds, (1) that there was no policy coverage under double indemnity for death by carbon monoxide inhalation, (2) that death did not result from accidental means, and (3) that due proof of death within the policy coverage was not furnished. The judgment entered sustains the motion on the three grounds asserted, each of which, in the apparent view of the trial court, would warrant a finding for respondent. The judgment also concludes that respondent did not waive any policy defenses by its conduct nor was it thereby estopped to assert the defenses.

Appellant raises four points of error intended to meet the alternate possibilities under the judgment rendered. We consider only two, however, the question of whether

by respondent's conduct it was estopped to present the defense of the coverage limitation on death from inhalation of gas and whether the doctrine of reasonable expectations precludes enforcement of this coverage exclusion. Resolution of these points suffices because other grounds relied upon to support the judgment, and accepted by the trial court, are rendered moot by this disposition as the ground for affirmance.

### I.

The primary issue considered by the trial court was whether respondent so conducted its investigation and processing of the benefit claim between March 1, 1979 and February 13, 1980 that it is estopped to raise belatedly the defense that the policies upon their face provided no double indemnity benefits if death resulted from inhalation of gas. The language of each policy on this subject states: " * * * such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from * * * the taking of poison or inhaling of gas, whether voluntary or otherwise. * * * " Irrespective of the events which preceded discovery of Kenneth Lawrence's body, the policy language did not provide double indemnity coverage for the cause of death sustained, carbon monoxide intoxication induced by inhalation of automobile exhaust. Unless this coverage defense is denied to respondent, on either of the grounds raised here, the benefit claim must fail.

■ Appellant contends the facts of the case justify application of the doctrine of waiver and estoppel to insurance policy conditions, exclusions and defenses. That doctrine generally holds an insurance company to a good faith requirement of apprising a claimant fully concerning the basis for rejecting a claim. Once the grounds for denying liability have been expressed, the company is thereafter estopped to raise other defenses. As the proposition is stated in

*Morris v. Travelers Insurance Co.,* 546 S.W.2d 477, 487 (Mo.App.1976), where a denial of coverage is based on one portion of a policy and subsequently the denial is asserted upon the basis of another separate and distinct theory emanating from a different provision of the policy, and plaintiff has relied to his detriment by preparing to meet the defense first asserted, the defendant may not shift the grounds of defense after the fact.

Respondent counters by first asserting that the doctrine of waiver or estoppel cannot be applicable under the facts because respondent issued no denial of the claim and could therefore not be held to have placed reliance on any particular policy defense. Secondly, even were the correspondence to be construed as a rejection of the claim, the defense based on gas inhalation as the cause of death is an aspect of coverage which may not be enlarged by waiver or estoppel.

■ The correspondence and negotiations which followed the first presentation of the double indemnity claims do justify the conclusion that the claims were tacitly if not expressly denied on the ground that Kenneth Lawrence caused his own death. Among the statements extracted from respondent's letters leading to this conclusion are the following: "The death certificate we have received classifies the insured's death as, 'undetermined' and, therefore, cannot be considered as proof of accidental death as called for by the policy"[1] and "In the absence of proof of an accidental death or other evidence that the death was accidental, we have no alternative but to close our files."

The situation during this protracted evaluation by respondent of a relatively simple policy claim for death benefits emerges as one of delay, indecision and unfamiliarity by respondent's personnel with the law controlling such claims and the provisions of respondent's own insurance policy form.

---

1. This is an incorrect statement. If a deceased dies from inhaling carbon monoxide gas and no other facts are shown, the law presumes the death was caused by accidental and not by intentional means. *Lynde v. Western and Southern Life Insurance Co.,* 293 S.W.2d 147, 149 (Mo.App.1956).

From the outset, respondent was aware of the cause of Kenneth Lawrence's death and this information, plainly displayed on the death certificate, should have alerted respondent's claims office to the necessity for a prompt consideration and exposition of the coverage defense. Instead, respondent neither accepted nor denied the claim, sought a needless medical authorization to confirm that which was already undisputed and led appellant to believe that the grounds of contest would be set upon the issue of whether Kenneth Lawrence had taken his own life. In the process, appellant retained counsel, filed suit and thus incurred expense and burdened the trial court and this court with a cause foredoomed to failure. Unfortunately, there is neither remedy for appellant nor sanction against respondent available in this case.

■ The general rule prevailing in the vast majority of jurisdictions holds the doctrines of waiver and estoppel unavailable to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom. See, Annot., 1 A.L.R.3d 1139 (1965); 44 Am.Jur.2d Insurance § 1577 (1982). The reason ordinarily advanced for the rule is that neither waiver nor estoppel may create a new contract for the parties. While an insurer may be estopped by its conduct from declaring a forfeiture of a policy, the coverage cannot be extended by the doctrine of waiver or estoppel. 43 Am.Jur.2d Insurance § 465 (1982).

Missouri follows the majority view on the subject. In *Blew v. Conner,* 328 S.W.2d 626 (Mo. banc 1959), the issue, among others, was whether the employer was covered by the compensation act and, if so, whether the insurer was liable under the Missouri Compensation Act when its policy covered only operations of a business in Illinois. The court held it was not, stating: "Waiver or estoppel cannot be used to create a cause of action but only to preserve pre-existing rights." Subsequent cases involving disputes over insurance coverage have consistently followed this rule. See *Macalco, Inc. v. Gulf Insurance Co.,* 550 S.W.2d 883, 891

(Mo.App.1977); *Weber v. Union Life Insurance Company,* 394 S.W.2d 565, 569 (Mo. App.1965). So too, in *Legler v. Meriwether,* 391 S.W.2d 599 (Mo.App.1965) was it held that representations as to coverage of a nurse under a liability policy issued to the doctors for whom she worked did not invoke waiver or estoppel to enlarge the coverage the policy actually provided. The court held that estoppel may prevent an insurer from asserting a defense to coverage the policy includes, but it cannot be used to create insurance where it would not otherwise exist.

■ In the present case, the policies which Kenneth Lawrence purchased obligated the company to pay only the principal sum if death resulted from inhalation of gas. The added coverage of double indemnity did not extend to this risk for which no additional insurance was provided. Regardless of the failure of the company to inform appellant promptly concerning the extent of coverage, the policies may not be rewritten under the concepts of waiver or estoppel to afford coverage not in existence from the inception.

Appellant cites a number of cases in support of her contention including *Aetna Casualty and Surety Company v. Haas,* 422 S.W.2d 316 (Mo.1968); *Stone v. Waters,* 483 S.W.2d 639 (Mo.App.1972); and *Hounihan v. Farm Bureau Mutual Insurance Company of Missouri,* 523 S.W.2d 173 (Mo.App. 1975).

■ The latter two cases do not support appellant's contention here and are distinguishable because in each, the doctrine of waiver or estoppel was invoked to preserve rather than create policy coverage. The fundamental precept of the doctrine, a reliance by the insured on the coverage as stated in the policy, limits use of the concept to cases where a condition, exception or other policy defense is offered to defeat coverage which would otherwise prevail. As the court stated in *Martinelli v. Security Insurance Company of New Haven,* 490 S.W.2d 427, 434 (Mo.App.1972), the principles of estoppel cannot be used to protect the insured against risks the policy express-

ly excludes. There can be no inference of reliance by an insured upon coverage not provided and thus, an essential element of estoppel is lacking.

The first cited case, *Aetna Casualty and Surety Company v. Haas, supra,* is less readily analysed. In that case, the insurer denied liability for a property damage claim on the ground of a policy condition excluding coverage for property in the care, custody or control of the insured. The opinion rejected that defense on the ground of a latent ambiguity which the court construed strictly against the company. As a second basis of defense, the insurer contended a gas exclusion clause also entitled it to avoid responsibility. As the court pointed out, however, the clause was contained only in an attached rating sheet which by its terms could not operate to limit coverage otherwise provided by the policy.

Appellant here relies on the following statement which appears at the conclusion of the *Aetna* opinion: "Appellant first denied coverage on the sole basis that there was no coverage because the property was in the care, custody and control of the insured under Exclusion J. It may not therefore assert a later different ground for denial of liability." While facially supportive of appellant's contention here, the last quoted statement did not actually rule any viable issue in the *Aetna* case and is therefore dictum. The gas exclusion clause was not a part of the policy insuring agreements and even had a defense on this ground been timely raised, it would have been unavailing. In the face of prior and subsequent cases holding waiver and estoppel inapplicable to questions of original coverage, the *Aetna* opinion is not authoritative to require a different result in the present case.

## II.

As a second ground for avoiding the summary judgment, appellant contends coverage of the policies should be enlarged beyond the policy terms by the concept of "reasonable expectations." This argument assumes accidental death benefits are not provided by the contractual undertaking of the policies where death results from inhalation of gas, but proposes to fix liability on the company notwithstanding the policy terms. The cited authority for the proposition is *Estrin Construction Company, Inc. v. Aetna Casualty and Surety Co.,* 612 S.W.2d 413 (Mo.App.1981). Appellant contends the clause dealing with death by gas inhalation was a surprise to appellant, it does not meet the reasonable expectations of insureds, it is unfair and is subject to correction by judicial decree.[2]

The theory of *Estrin* as discoursed in *Spychalski v. MFA Life Insurance Co.,* 620 S.W.2d 388 (Mo.App.1981), is that a contract of form imposed without negotiations evinces only a superficial assent to the printed words of the document which must be construed in accordance with the expectations of the parties based on the full circumstances of the transaction. While certain portions of an adhesion contract are truly negotiated, such as the amount of insurance and the names of those insured, the bulk of the contract provisions not only are arbitrarily set by the insurer but are without expectation they will be read by the policyholder. The sense of *Estrin* is not a resolution of ambiguous language but effectuation of reasonable expectations of the average member of the public who accepts such contracts and is then disappointed to learn that the particular loss or benefit is outside the language of the insuring provisions.

In both *Estrin* and *Spychalski,* the facts were found not to warrant implementation of the reasonable expectation doctrine. Counsel in the present case have cited no Missouri decision in which the doctrine resulted in judicial enlargement of insurance contract terms and independent research has disclosed none. By inference,

---

2. It is to be noted that appellant concurrently accepts the policy condition of death by external, violent and accidental means as a valid qualification and thus anticipates the necessity for a fact finder to decide whether Kenneth Lawrence's death was a suicide. What differentiates this precondition of liability from the exclusion of deaths caused by gas inhalation is not explained by appellant nor discernable.

however, the recent opinion in *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695 (Mo. banc 1982), suggests that several conditions, presumably to be established by allegation and proof, must be shown before rules applicable to adhesion contracts become pertinent. Among these are the relative strengths of the parties in their bargaining roles, the relative availability of alternate and more attractive contracts and the presence of oppressive features in the contract. Additionally, and perhaps more importantly, where the doctrine is applicable, it must appear that the expectation of coverage was not that of the claimant alone but was that of the average public member, as *Estrin* requires.

In the present case, appellant framed no issue of reasonable expectations in the pleadings, either initially or in response to the policy coverage defense raised affirmatively by respondent's answer. Respondent then moved for summary judgment relying upon the undisputed facts including the insuring agreements of the policies and the cause of death set out in the death certificate. Those facts constituted the sum total of the evidence and are deemed to be the operative facts under Rule 74.04(e) when the opposing party does not respond by a verified denial or counteraffidavits. *Scaife v. Kansas City Power and Light Co.*, 637 S.W.2d 731 (Mo.App. 1982).

Concluding, as we do, that rules pertaining to adhesion contracts find no application here for want of tender of the issue, the question is to be ruled on the basis of principles applicable to the issues as presented to the trial court. That law obligates the court to enforce unambiguous terms of the policy giving the language used its plain meaning. *Robin v. Blue Cross Hospital Service, Inc., supra.* The loss of life of Kenneth Lawrence entitled appellant to recover the principal amounts of the policies but there was no coverage for the claim to double indemnity. The trial court was correct in so ruling.

The judgment is affirmed.

All concur.