NEW YORK LIFE INSURANCE COM-
PANY, Appellant,

v.

Lee STRUDEL, Appellee.

No. 15945.

United States Court of Appeals
Fifth Circuit.

April 5, 1957.

L. S. Julian, Miami, Fla., Shutts, Bowen, Simmons, Prevatt & Julian, Miami, Fla., of counsel, for appellant.

Phillip Schiff, Dubbin, Blatt & Schiff, Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict for plaintiff, holding appellant insurance company liable on four insurance policies in spite of the fact that the deceased insured had intentionally misstated material facts on his application. Appellant complains of various features of the charge and of the trial court's failure to direct a verdict, enter a judgment n. o. v., or at least to order a new trial.

In March 1952 Henry Strudel applied to appellant's agent for $20,000 of life insurance; on March 29th he completed Part II of the application: "Answers to the Medical Examiner" in which he gave concededly wrong answers to several questions that might have revealed the fact that he had suffered a heart attack in 1947 and had since been under treatment by various doctors.[1] Two days later, on March 31st, he entered the Miami Heart Institute and stayed there until April 8th for observation and treatment of his heart condition, but he did not reveal this fact to any agent or investigator of the insurance company at any time during the subsequent investigation.

When the application was referred to appellant's home office the Medical Director evidently had some grounds, unfortunately not inquired into at the trial, for suspecting that Strudel had once suffered from a heart disorder, for on that

---

1. In particular, Strudel answered the following questions in the negative:

"7. B. Have you ever been under observation or treatment in any hospital, clinic, asylum or sanitarium?

"8. Have you ever had, or ever consulted a physician or practitioner for, any ailment or disease of

* * * * *

"B. The Heart, Blood Vessels or Lungs?

"10. Have you ever had or ever consulted a physician or practitioner for, any ailment or disease not included in your above answers?

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?"

day he addressed an inquiry through the Medical Information Bureau to other insurance companies about any previous application that had been submitted to them by Strudel, and also instructed the appellant's Miami doctor, who had recorded Strudel's original answers to the medical questionnaire, to make a further report on applicant's history of heart trouble and to complete a "heart chart." On April 10th a reply was received from the Provident Life and Accident Insurance Company, which stated merely:

"We considered Mr. Strudel for insurance in 1949. I am sorry our information is confidential and cannot be divulged."

On April 22nd Strudel was examined again by appellant's Miami doctor who found no abnormality of the heart and also recorded some more of applicant's misleading answers to the effect that he had no history of heart disease. In early May appellant assigned an investigator to check on the truth of the report of Strudel's 1947 heart disorder. He first interviewed a number of people, including three of Strudel's neighbors, two merchants who had business establishments close to his, a long time business associate, and the owner of an apartment house where he had formerly lived; all gave negative responses to all questions about heart trouble, hospitalizations, etc. —but it appears that only the latter two had known Strudel for as long as five years. The investigator also interviewed the Strudels, who again denied any history of heart trouble, and to "prove it" referred him to their family doctor, who, upon being questioned, also denied that he had any knowledge of any past or present heart disease in his patient. No attempt was made to contact all the hospitals or doctors in Miami who might have treated Strudel at some time for there were 36 of the former and over 600 of the latter and in any case information could only have been obtained from them pursuant to an authorization from the applicant. No follow-up was made on the report of the Provident Life Insurance Company, and all the other

reports being entirely negative, the policies were issued on May 21, 1952.

On October 21, 1952, Strudel died of a heart attack. Appellee, insured's wife, filed a claim and the required proofs of death, in which, incidentally, both she and the family physician again gave answers calculated to conceal their knowledge of the preliminary stages of the disease that caused the death. Appellant thereupon undertook another investigation which initially covered the same ground as the earlier one, with the same negative result. The investigator testified that he then received an anonymous phone call referring him to a Dr. Nichol and to the Miami Heart Institute, who, upon proper authorization having been obtained from the appellee, revealed the full history of insured's heart trouble dating back to 1947, including the names of still other physicians who had treated Strudel for it. It also appeared that the family doctor, though he had not participated in this aspect of his patient's care, had been cognizant of the existence of the condition. An investigator was also sent to the Provident Life Insurance Company, from whose files it appeared that Strudel had applied for insurance in 1948, denying any heart trouble, but that an appended confidential report from a credit bureau had indicated that he had suffered a heart attack about a year earlier; the company had then addressed further inquiries to the applicant and to his then family physician, but receiving no answers had taken no action on the application, either to accept or to reject it.

At the trial the only issue was whether, in view of the undisputed misrepresentation in the application, appellant was precluded from pleading reliance thereon in order to rescind the policies (an offer to return the premiums with interest having been made) because of the independent investigation it had made or because of the knowledge it had thereby obtained. Appellant unsuccessfully moved for a directed verdict, first at the close of plaintiff's case during which no evidence relevant to the nature of the inves-

tigation was presented, and again at the conclusion of all the evidence, at which time the court indicated that he thought that there was some slight evidence on which the jury could find for plaintiff. The court's charge was then hammered out in a long discussion among counsel and the court, from which it is somewhat difficult to determine what objections were clearly made by the appellant. The jury was instructed, in substance, that if they found that the insurance company had received information indicating the falsity of the statements in the application and instead of choosing to rely solely on them decided to make an independent investigation, which it then failed to pursue with reasonable diligence after they had received or found such further facts as would cause a prudent man to make further inquiry, and that if the investigation if properly conducted would have revealed the truth, then the verdict should be for the plaintiff. The jury did return such a verdict on which the court entered judgment, denying motions for a new trial or for a judgment n. o. v.

We need not consider in detail the charge and the objections to it for we do not believe that there was any evidence from which the jury could, directly or by inference, find that under the applicable principles of law appellant was precluded from rescinding the policies. The general rule is, of course, that the intentional misrepresentation by the applicant of a material fact relied on by the insurer permits the latter to void the policy. Mutual Life Ins. Co. of N. Y. v. Denton, 93 Fla. 276, 112 So. 53; Thompson v. N. Y. Life Ins. Co., 143 Fla. 534, 197 So. 111; 29 Am.Jur., Insurance § 524; 45 C.J.S., Insurance § 595(d) (1) and (2). To this rule there are at least two somewhat intertwined and frequently confused, but nevertheless distinct, corollaries, which enable an insured to escape its rigors if it can be shown that there was no, or there should not have been any, actual reliance, and thus

in effect there was no deception: (1) if the insurer has actual knowledge of the true facts, or of the falsity of the statements, or at least has sufficient indications that would have put a prudent man on notice and would have caused him to start an inquiry which, if carried out with reasonable thoroughness, would reveal the truth, he cannot blind himself to the true facts and choose to "rely" on the misrepresentation[2]; (2) if the insurer chooses to make an independent inquiry and the subject matter and the circumstances are such that he is in a position to ascertain the facts by a reasonable search, then he cannot plead reliance even if his investigation is as a matter of fact cursory and did not reveal the true facts[3]—and if in the course of such an investigation he finds clues indicating the falsehood of some representations he is also bound, by the first rule, by what a reasonable inquiry into those clues would show. Thus in the first case the question is whether the truth was sufficiently apparent, in view of all the facts known by or coming to the attention of the insurer, that a reasonable inquiry induced thereby would have revealed the falsehood of the representation; in the second the question is whether the insurer was in a position to make the type of inquiry that would reveal the truth and actually chose to do so. 3 Pomeroy, Equity Jurisprudence §§ 892–93, 895 (5th ed.); 23 Am.Jur., Fraud and Deceit § 144 at 946; A.L.I. Restatement, Torts, § 547 comment a. However, the mere fact that in order to test the truth of the representations some independent inquiry is made, which necessarily is really in the nature of a fishing expedition rather than a systematic search that will necessarily reveal the truth if carried out with reasonable thoroughness, does not indicate lack of reliance; to hold so would enable a liar who falsifies facts peculiarly within his own knowledge to subject an insurance company to an unconscionable squeeze play: if the company makes any independent checks

---

2. See 16 Appleman, Insurance Law and Practice § 9088 at 624, 626; 17 id. § 9404.

3. 17 id. § 9403 at 15.

he would claim that it isn't "relying" and thus the policy is not voidable even for flagrant, intentional misstatements which the company must then find out at its own peril—the only alternative for the company would be to indicate 100% faith and reliance by making no investigation whatsoever, at the risk of having a court later determine that inconsistencies in the application or information otherwise brought to their attention should have caused them to make at least such an inquiry as a prudent man would have made. Also, if it made no investigation whatever the policy would become incontestable even for fraud after two years. The law is not that tender toward those who fail in their responsibility to exercise the necessary good faith[4] in their dealings with others.

■■ The first question therefore is whether the appellant here knew the true facts, or at least had at any time obtained such knowledge about the facts that a consequent reasonable inquiry would have revealed them. At the trial the only evidence of such knowledge was the indication that appellant's Medical Director had some suspicion that the insured had had heart trouble, as indicated by the Director's communication to the company's Miami doctor. The nature of that knowledge was in no way established, and therefore we cannot say, nor could the jury have found except by unwarranted speculation, that that information called for any investigation beyond that which was carried out. No further positive indications of any sort came to light in that investigation which could have had the effect of destroying appellant's right to rely in good faith on the representations or which even indicated the desirability of further search. The report from the Provident Life Insurance Company was entirely noncommittal, thus differing from that in Columbian Nat. Life Ins. Co. of Boston v. Rodgers, 10 Cir., 116 F.2d 705, certiorari denied 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521, which apparently on its face indicated some negative factors, 116 F.2d at page 707, and in the absence of any testimony here that these innocuous words were understood by the Medical Director to carry a negative implication, and of any evidence that in spite of their statement the Provident Company would actually have opened its files upon further request (as they did in the post-death inquiry), the jury had no evidence from which to conclude that appellant had information which precluded it from relying on the representations.

On this ground it is possible to distinguish most of the cases relied on by the appellee, which involve situations in which the insurer had notice of some inconsistencies and could easily have obtained the true facts, and only by closing his eyes could he still claim to "rely" on the manifestly false representation. In Johnson v. Life Ins. Co. of Georgia, Fla., 52 So.2d 813, insurer's agent learned two months after the policy was issued, and within the contestable period, that the insured was living in a tuberculosis sanitarium, but nevertheless continued collecting premiums from him until his death. In N. Y. Life Ins. Co. v. Kincaid, 122 Fla. 283, 165 So. 553, 557, the court stated that "all the evidence relied on to cancel the reinstated policies [i. e. evidence of previous medical treatments] were present and available at the time of reinstatement." In Reserve Loan Life Ins. Co. v. Boreing, 157 Ky. 730, 163 S. W. 1085, the Medical Director knew of applicant's habitual intoxication, for the false denial of which cancellation was later attempted. In DiPasqua v. California Western States Life Ins. Co., 106 Cal.App.2d 281, 235 P.2d 64, the investigation by the insurance company actually revealed the falsity of the representation on which it later still claimed to have relied. Here there were no such ambiguities or inconsistencies in the application and the other records put into

4. For the Florida rule as to the degree of good faith required of an insurance applicant, see Mutual Life Insurance Co. of N. Y. v. Denton, supra, 112 So. at pages 54–55.

evidence as were present in Love v. Metropolitan Life Ins. Co., D.C.E.D.Pa., 99 F.Supp. 641, and as would make the bona fides of the reliance on the application a jury question. See Provident Life & Accident Ins. Co. v. Hawley, 4 Cir., 123 F.2d 479, and Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72, for cases in which insurer's knowledge of minor inconsistencies or falsehoods in the application were held not to bar reliance on representations which proved to be false.

 The second question is whether the very fact that insurer made an independent investigation precluded his reliance on the application. Clearly this cannot be so here for the very nature of the inquiry was such, and of necessity had to be such since the information sought about applicant's medical history was primarily within his own knowledge, that there was no assurance that the facts would come to light during the inquiry. Neighbors, merchants, and landlords may or may not have the desired information and though if enough are consulted perhaps some would be helpful there can be no requirement of consulting an indefinite number if all the initial responses are negative. All those in a position to know, the applicant, his wife—the appellee, the family doctor, and the business associate, gave false answers tending to induce appellant to stop the inquiry. Cf. A.L.I. Restatement, Torts § 547 comment a. The project of consulting all the doctors and hospitals in an area the size of Miami was unreasonably burdensome even if the authorizations could have been obtained and was not even calculated to give assurance that a negative result would be conclusive. Thus this case differs from Columbian Nat. Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67, on which appellee principally relies; there the applicant actually communicated to the insurer the names of the hospital and of the doctor who could give his complete medical history and thereby the investigation was given at least a reasonable start if the company chose to make one. The case is also distinguishable on other grounds, principally in that it appeared that the applicant was not there guilty of any misstatements but had clearly indicated that his own recitation of his medical history was but fragmentary. The court's broad statement to the effect that:

"Having declined to rely solely upon the answers contained in the application forwarded by the medical examiner, and having made independent investigation elsewhere, it follows that the company is charged with all the knowledge it might have obtained had it pursued the inquiry to the end with reasonable diligence and completeness." 19 So.2d at 71.

is, in the context of that case, merely dicta if read without the implied qualification derived from its facts that the company had been placed in a position to make a fruitful inquiry. The three cases cited by the Florida Supreme Court in support of the quoted proposition support this view for all hold merely that in a contract for the sale of land, where the purchaser has full opportunity during an inspection to observe certain physical features of his acquisition, he may not "rely" on false representations as to those features made to him by the seller which do not accord with the clear evidence of his eyes. See also Atwood v. Small, 6 Clark & F. 232, 7 Eng.Rep. 684, which shows that the doctrine of equitable estoppel from relying on a misrepresentation only applies where the deceived party is in a position to embark on an investigation calculated to reveal the true facts.

There being no evidence on which the jury could have returned a verdict for plaintiff, a judgment non obstante veredicto must be entered.

Reversed and remanded for entry of judgment for the defendant below.