Mrs. Myrtle H. TRAWICK, Plaintiff-Appellant,

v.

The MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, NEW YORK, Defendant-Appellee.

No. 30981.

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1971.

Rehearing and Rehearing En Banc Denied Oct. 28, 1971.

**1294**

Erwin C. Ward, James A. Peden, Jr., Stennett, Wilkinson & Ward, Jackson, Miss., for plaintiff-appellant.

David Williams, Wilbourn, Williams & Glover, Meridian, Miss., for defendant-appellee.

Before GOLDBERG, GODBOLD, and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In this diversity litigation concerning the validity of life insurance policies, the trial court, after a jury had solemnly come to a decision, made a post-trial evaluation of the life insured's relationship with the insurer. While we accede to the trial judge's postmortem assessment to the extent of granting a new trial, we deny his complete veto of the jury's determination by entry of judgment *non obstante veredicto*.

In 1968 the defendant, Manhattan Life Insurance Company of New York, issued two life insurance policies having a total face value of $130,000 to Harrison H. Trawick. When the insured succumbed to a heart attack in 1969, the defendant refused payment of the death benefits to the widow, Plaintiff Myrtle H. Trawick, pinioning its absolution on material misrepresentations by the insured in answering certain medical questions in the policy applications. The defendant claimed that the insured's failure to disclose his extensive history of heart disease constituted a forfeiture of the two policies.

As a result of the defendant's nonpayment, the plaintiff instituted two actions, one on each policy, in a circuit court of Hinds County, Mississippi. The plaintiff sought recovery under a theory of waiver of forfeiture, alleging that Manhattan Life issued both policies with knowledge of the insured's cardiac ailment. On motions of the defendant, both actions were removed to a federal district court, and a consolidated trial resulted in a jury verdict for the plaintiff in the principal amount of $130,000. Thereafter, the trial court granted the defendant's motion for judgment notwithstanding the verdict, and, pursuant to Rule 50(c) of the Federal Rules of Civil Procedure, conditionally granted the defendant a new trial in the event the judgment was reversed on appeal. Aggrieved by the district court's peremptory ruling, the plaintiff appealed.

As a general rule, a material misrepresentation made by an applicant for an insurance policy and relied upon by the insurer justifies the rescission of that policy. Apperson v. United States Fidelity & Guaranty Co., 5 Cir. 1963, 318 F.2d 438, 441, and cases cited therein. However, Mississippi courts have long recognized the doctrine of waiver of forfeiture as an important limitation to an insurer's defense of material misrepresentation. *See, e. g.,* United States Fidelity & Guaranty Co. v. Yost, 1938, 183 Miss. 65, 183 So. 260, 185 So. 564; Stonewall Life Insurance Co. v. Cooke, 1932, 165 Miss. 619, 144 So. 217. In its most recent pronouncement on the subject of waiver of forfeiture the Mississippi Supreme Court stated:

> "An insurer may waive the right to forfeit or rescind a policy of insurance · * * * by recognizing the validity of the policy and continuing it in force after knowledge of circumstances entitling it to avoid the policy."

Casualty Reciprocal Exchange v. Wooley, Miss.1969, 217 So.2d 632, 636.

Against this background of substantive law, the crucial inquiry at the trial

of this case was whether or not the defendant knew prior to the issuance of the policies that the insured had a history of coronary disease. The jury's resolution of this conflict was in favor of the plaintiff. But the district court reversed this determination, by entry of a judgment notwithstanding the verdict, on the basis that the undisputed evidence showed that the defendant had no actual knowledge concerning the insured's heart condition. Plaintiff vigorously contests this conclusion, and asserts that the record reflects substantial evidence from which the jury could have found that the company had actual knowledge of the insured's physical condition prior to the issuance of the policies and that such knowledge operated as a waiver to prevent the company from interposing its defense of material misrepresentation. We find merit in plaintiff's protestations and accordingly reverse.

■■■ Within the realm of peremptory instructions, this court has recorded numerous testimonials to the proper relationship between a trial judge and a jury.[1] While judicial interference with jury resolution is clothed in an aura of centuried perdurance, a trial judge's epilogue has never been deemed so sacrosanct as to escape scrutiny. We therefore turn our attention to the task of scrutinizing, applying the following federal standard for testing the sufficiency of the evidence:

> "On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive

at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. * * *"

Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374.

Our examination of the record in this case reveals the undisputed fact that the defendant had in its possession prior to the issuance of the policies four electrocardiogram readings [EKGs] on the insured. Plaintiff's medical expert testified that these EKGs showed myocardial infarction and that "there's just almost no other probability * * *. [T]here is not really any doubt." The defendant's medical expert testified that the four EKGs were sufficient evidence to put him on notice or inquiry as to the existence of a heart condition, and that if he were a medical examiner for an insurance company seeing these readings on an applicant, he would reject the application. It is also undisputed that the defendant had in its files prior to the issuance of the policies a report on the insured from the Medical Information Bureau, a central clearing house supplying medical information to its member companies concerning applicants for life and health insurance. This report contained information strongly suggesting that the insured had suffered a myocardial infarction and stated that the insured was afflicted with a serious heart condition known as cardiac arrythmia. Further, it is undisputed that the defendant charged the insured a premium which was 63% above the normal rating for a man of his age. The company justified this abnormal premium on the basis of the insured's high blood pressure and non-specific electrocardiograms, medical data which are

1. See, e. g., Alman Brothers Farms & Feed Mill, Inc. v. Diamond Laboratories, Inc., 5 Cir. 1971, 437 F.2d 1295; Taylor v. Bair, 5 Cir. 1969, 414 F.2d 815; North River Insurance Co. v. Hubbard, 5 Cir. 1968, 391 F.2d 863; Employers Mutual Casualty Co. v. Mosqueda, 5 Cir. 1963, 317 F.2d 609.

commonly associated with heart disease. Moreover, the defendant knew that the insured had been refused life insurance by another company immediately prior to the submission of his application to Manhattan Life. Finally, the record reveals that reasonable and fair-minded men could have concluded from sharply conflicting evidence that the defendant prior to the issuance of the policies possessed hospital records of the insured which contained (1) a diagnosis of "arteriosclerotic heart disease with angina pectoris," (2) electrocardiogram readings showing abnormality of the heart muscle, and (3) a family history revealing that the father and two brothers of the insured died of heart trouble.

■ We think this plethora of evidence tending to show that the defendant knew of the insured's heart condition at the time the policies were issued clearly satisfies *Boeing's* "substantial evidence" standard. In spite of the above inventory of medically criminating evidence, however, the defendant presses for exoneration on the basis that such evidence does not show *actual* knowledge. In other words, Manhattan Life asserts that it relied solely upon the application of the insured in issuing the policies, and that proof of collation and possession of medical data does not constitute a showing that the defendant or any of its many employees either actually viewed such information or had it interpreted by medical experts. Assuming *arguendo* that the above listing of "substantial evidence" does not support a finding of actual knowledge by Manhattan Life of the insured's history of coronary disease, a proposition with which we do not agree, the defendant's argument is nevertheless wanting in merit.

■ This court has held that if an insurer chooses to make an independent investigation of an applicant and if the circumstances are such that it is in a position to ascertain the facts by a reasonable search, then the insurance company cannot avoid liability by pleading reliance on the insured's application. Apperson v. United States, *supra*; New York Life Insurance Co. v. Strudel, 5 Cir. 1957, 243 F.2d 90. Since the defendant in this case conducted an independent investigation and "ought to have known of the facts, or, with proper attention to its business, would have been apprised of them, it has no right to set up its ignorance as an excuse." Knights of Pythias of the World v. Kalinski, 1896, 163 U.S. 289, 298, 16 S.Ct. 1047, 1051, 41 L. Ed. 163. These precedents do not hold that an insurance company has the right to armor itself with a collation of medical facts and then employ that armor as a defensive weapon when a claim is made upon it. Rather, they support our conviction that the defendant should be charged with knowledge of what appears in its own records. Therefore, the fact that substantial information concerning the insured's heart condition was dungeoned in Manhattan's files and not proven to have been read by human eyes or digested by medical experts is no escape route to evade liability.

We reiterate that the record in this case clearly reflects substantial evidence from which reasonable and fair-minded men could have found that the defendant knew or should have known of the insured's physical condition prior to its issuance of the policies. This is not a case of bald falsification to an unsophisticated individual operating in the stygian darkness of a medical vacuum. The jury could have found that the defendant issued policies and took this man's premium with knowledge of medical impairment or access to information on the basis of which it should have known of medical impairment. A life insurance company dealing daily with the lives, the health, the mortal expectancies of human beings, and having the opportunity to review medical phenomena, does not have to possess all of the exactitudes of medical prognoses or know all the scientific arcana of diagnosis in order to be apprised of danger signals. On the basis of the record in this case the jury in its day-to-day homely wisdom could have found that the defendant knew or should have known that the insured's health was not of the best.

Since the jury is not a vestigial appendage in our jurisprudential system, we hold that the court below erroneously aborted the factfinder's legitimate determination. Accordingly, we remand the case for a new trial in accordance with the trial court's conditional ruling.[2]

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petitions for Rehearing are denied, and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petitions for Rehearing En Banc are denied.

---

2. See Wiggin v. Kohlmeyer & Co., 5 Cir., 446 F.2d 792 [July 9, 1971].