Mrs. Myrtle H. TRAWICK, Plaintiff-Appellee,

v.

The **MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, NEW YORK,** Defendant-Appellant.

No. 72–1706.

United States Court of Appeals,
Fifth Circuit.

June 18, 1973.

Rehearing and Rehearing En Banc Denied Sept. 10, 1973.

---

David Williams, Meridian, Miss., for defendant-appellant.

Erwin C. Ward, James A. Peden, Jr., Jackson, Miss., for plaintiff-appellee.

Before GODBOLD, DYER and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

This suit by the widow and beneficiary of Harrison Trawick for death benefits from two insurance policies on his life is on its second journey to this court. Our opinion on the first appeal is Trawick v. Manhattan Life Ins. Co., 447 F.2d 1293 (C.A.5, 1971).

In his applications for insurance Trawick had misrepresented his physical condition. The central issue in this litigation became whether the insurer, Manhattan, issued the policies despite its knowledge of the applicant's prior history of heart disease. At the first trial there was a jury verdict for plaintiff, but judgment n. o. v. was granted for Manhattan on the basis that the undisputed evidence showed that it had no actual knowledge of Trawick's heart condition. We reversed and remanded for a new trial. On remand, at the second trial, a jury again returned a verdict for the plaintiff. Manhattan again appeals. We affirm.

1.

A major contention of appellant is that the prior decision of this court was wrong and should be overruled. No val-

id reason is shown why we should depart from the law of the case, and, in fact, we agree with the earlier decision.

The trial court considered and denied Manhattan's motions for judgment n. o. v. and for a new trial based on the alleged insufficiency of the evidence. We agree with the District Judge's ruling.

## 2.

The only point which justifies discussion is defendant's claim that the court reversibly erred in denying it the right to reargue to the jury when the court, after oral argument, gave and then withdrew an erroneous instruction which had been requested by defendant. The starting point for disposition of this issue is an analysis of our prior decision. We then held that there was sufficient evidence of information in the possession of Manhattan prior to issuance of the policies to justify a jury finding that Manhattan knew of the insured's heart condition. Alternatively we concluded that if *arguendo* the evidence was insufficient to support a finding of actual knowledge in the sense of awareness by the insurer of the content of the information in its files which it had obtained pursuant to an independent investigation of the insured's condition, it was charged with knowledge of such information.

There were several critical pieces of evidence which the jury could have found were the source of knowledge by the company, actual or imputed, prior to the time it issued the policies. It was undisputed that prior to issuance Manhattan had in its files various information which Judge Goldberg described in the prior opinion. There was, however, a conflict in the evidence concerning whether, prior to issuance, the company had in its possession the applicant's hospital records from St. Dominic's Hospital. In his order denying the post-trial motions of defendant after the second trial, the District Judge described the contents of these records:

The hospital records of St. Dominic's unmistakably involved all the facts and circumstances in one small jacket file to the effect that Harrison Trawick had been hospitalized there for treatment for a very serious heart condition prior to his application for these policies of insurance on his life.

In our prior opinion we held:

[T]he record reveals that reasonable and fair-minded men could have concluded from sharply conflicting evidence that the defendant prior to the issuance of the policies possessed hospital records of the insured which contained (1) a diagnosis of "arteriosclerotic heart disease with angina pectoris," (2) electrocardiogram readings showing abnormality of the heart muscle, and (3) a family history revealing that the father and two brothers of the insured died of heart trouble.

447 F.2d at 1296. The "sharply conflicting" evidence to which the opinion referred came about in this manner. By interrogatory plaintiff requested the insurance company to give the names of doctors and hospitals that had furnished to it past medical data on the applicant and the dates the data was received. Manhattan's answer in narrative form said, *inter alia*, "The defendant secured information relative to Mr. Trawick's past medical history from Dr. Gayden Ward, Dr. Temple Ainsworth, *St. Dominic's Hospital*, Retail Credit Company, and the Medical Information Bureau *before the policies were issued*." (emphasis added). In mid-trial, after it became apparent that the contents of the hospital records were damaging to its position, the company asked leave to amend the answer by deleting the name of St. Dominic's from the above-quoted sentence, on the ground that through error it had answered erroneously and that in truth it had not received any records from St. Dominic's. The court refused to permit the amendment. It had, however, allowed Manhattan to introduce oral testimony to the effect that it had

received no records from St. Dominic's and that the name of the hospital as a source of information had been included in the answer through error.

On remand and prior to the second trial, the court allowed the defendant to amend its answer to the interrogatory so as to delete St. Dominic's Hospital as a source of information. The effect of this was to deny that any records had ever been received from the hospital. At trial both the original and the amended answers were read into evidence. The officer of Manhattan who had sworn to the original answer to interrogatories testified orally that there was nothing in the company's files from St. Dominic's *prior to issuance of the policies*.

The hospital's director of medical records testified that Trawick's only admission to the hospital had been in 1963 (five years before the issuance of the policies), and that all his medical records were kept in a single folder which would be the only record available to an insurance company seeking medical information on him.[1]

The defendant in writing requested the following charge:

> You are instructed that *there is no evidence in this case* from which you can find that Manhattan Life Insurance Company secured information from St. Dominic Hospital *before the death of Harrison Trawick*.

The record does not show when the request was made, but the fair inference is that it was timely. The trial judge wrote "Given" on the instruction. What the judge may have said orally to defense counsel is not in the record, but the judge acknowledges that the defendant had a fair expectation that the charge would be given. In his oral charge, after closing arguments, the court gave the instruction, as he had said he would. Upon objection by plaintiff the court recognized its error and, over the objection of defendant, in-structed the jury that he withdrew the charge and that the jury should decide under all the evidence whether the company had the information from St. Dominic's prior to the death of the insured. Defendant then asked the opportunity to reargue the particular point and the court, while stating that it believed defendant had relied on the expectation the charge would be given, denied the request. This denial is asserted as error on appeal.

■■■■ Under some circumstances, when the court has announced prior to argument that it will give a charge and subsequently declines to give, or gives and withdraws the charge, the court should allow the party misled, if he requests it, to reargue that point to the jury. Loveless v. United States, 104 U.S.App.D.C. 157, 260 F.2d 487 (1958); Terminal R. Ass'n v. Staengel, 122 F.2d 271 (C.A.8, 1941); Downie v. Powers, 193 F.2d 760 (C.A.10, 1951). This is an implementation of the requirement of Rule 51, Fed.R.Civ.P. and Rule 30, Fed. R.Crim.P., that prior to argument the court shall inform counsel of its proposed action upon timely written requests for jury instructions. *Id.* It is but a particularized instance of the general discretionary power of the court over oral arguments. The district court has wide latitude and discretion in supervising the time limits, the scope, and the extent of argument and summation to the jury. United States v. Smith, 433 F.2d 1266 (C.A.5, 1970); Rochester Civic Theatre, Inc. v. Ramsay, 368 F.2d 748 (C.A.8, 1966); Wagner v. Pennsylvania Ry. Co., 282 F.2d 392 (C.A.3, 1960); Hockaday v. Red Line, 85 U.S.App.D.C. 1, 174 F.2d 154 (C.A.D.C.1949); Palmer v. Miller, 145 F.2d 926 (C.A.8, 1944); Biggs v. Mays, 125 F.2d 693 (C.A.8, 1942); Chesapeake & O. Ry. Co. v. Richardson, 116 F.2d 860 (C.A.6, 1941); Fidelity Phenix Fire Ins. Co. v. Vallone, 74 F.2d 137 (C.A.5, 1934). Whether there should be reargument is a matter

---

1. The director's description of the contents of the folder was consistent with that in the opinion by Judge Goldberg.

for the discretion of the trial court, subject to review for abuse of discretion. Counsel should be permitted to reargue "if justice requires" it. Downie v. Powers, *supra*, 193 F.2d at 767. In United States v. Shirley, 435 F.2d 1076 (C.A.7, 1970), the trial court, after argument modified its charge in a manner correct as a matter of law. To defendant's argument that he was prejudiced because he would have argued differently had he known of the charge, and that the charge made his oral argument ineffective, the court held:

> Although we recognize the necessity of assuring compliance with the rule [Rule 30 Fed.R.Crim.P.] so that counsel may effectively plan their arguments to the jury, United States v. Bass, 425 F.2d 161, 163 (7th Cir. 1970), the rule is not so inflexible as to restrict the trial judge in giving a supplemental or modified instruction designed to prevent the jury from becoming confused and deciding the case on a false basis.

435 F.2d at 1078.

■ Moreover, in the circumstances of this case we must give appropriate effect to the principle of "invited error," that range of conduct which may create error at trial but which compels appellate courts to affirm when the party inducing the error raises it on appeal. United States v. Wurtsbaugh, 140 F.2d 534 (C.A.5, 1944); Cranston Print Works v. Public Service Co., 291 F.2d 638 (C.A.4, 1961); United States v. Agueci, 310 F.2d 817, 840 (C.A.2, 1962). See also Canon 7, EC 7–20, & DR 7–106(B), ABA Code of Professional Responsibility. The requested, and promised, instruction was not even arguably correct factually and was misleading as well. There was no rational basis on which defense counsel could have thought that it was correct. The question of possession of the St. Dominic's

records prior to issuance of the policies, and the company's change of position regarding them, had been fought out at the first trial and fought out again on appeal. It was at the heart of the prior decision.[2] Our prior opinion pointed out that whether the company possessed the records had been the subject of "sharply conflicting evidence." The conflict was not removed at the second trial but continued in a more accentuated form—an answer which said "we received the records prior to issuing the policies"; an amended answer the effect of which was, "we did not receive the records at all"; and oral testimony which said, "we did not receive the records before issuance of the policies." The instruction was not only predicated on an erroneous statement of the evidence but was misleading as well. The critical issue was not whether the company possessed the records before Trawick's death but *before the policies were issued.*

Defendant had full opportunity before it made its argument to correct the error into which it had led the court. Prior to the oral arguments, in denying Manhattan's motions for directed verdict, the trial judge had said this:

> I think that's a wide open question as to whether or not this insurance company undertook and made some independent investigation of this insurance risk before writing it and as to whether or not they had in their possession any information which charged them in law with knowledge of the fact that Mr. Trawick had a very serious heart condition which I think he certainly had contrary to his statement prior to their writing this insurance policy, these insurance policies on his life. Gentlemen, I think that's a jury question and I will overrule that motion.

The question of the dispute over pre-issuance notice to Manhattan surfaced

---

2. The trial judge noted in his order denying defendant's motion for new trial after the second trial: "That instruction [the instruction given and withdrawn] embodied the controlling principles in the case as announced by this circuit, and its approval would have been tantamount to a peremptory instruction."

again in plaintiff's first closing argument. Counsel pointed out the conflict between the first answer and the amended answer. Defense counsel responded in his argument by telling the jury:

and if you will listen to the Judge he will tell you that there is nothing from which you can find that this company had any information whatsoever from St. Dominics Hospital *before these policies were issued.*

This was not an accurate statement of the contents of the charge which counsel had requested and had a "fair expectation" would be given. In plaintiff's closing argument, counsel reiterated the conflict in the answer and the amended answer and stated he expected the court to leave it to the jury to determine who was telling the truth. At none of these stages did the defense object or make any other move to correct the error into which it had led the court.

When plaintiff's counsel objected to the requested and given instruction he pointed out to the court the conflict in the evidence concerning possession of the hospital records prior to issuance of the policies. The court, after sustaining the objection, recalled the jury and instructed it that the court was withdrawing the instruction and that the jury should decide under all the evidence whether Manhattan had received the St. Dominic's records before the death of Trawick. Defendant was given the opportunity to object again and then asked (without referring to the confusion it had brought about between date of issuance and time of death) for the right to reargue.

As part of the oral charge the court had instructed the jury that Trawick's answers in his application were materially false, and then said, *inter alia:*

Now under these circumstances and conditions the sole and only question for you to decide in making your verdict in this case is as to whether or not Manhattan knew or had the facts in its possession from which it should have known that the insured Mr. Harrison Trawick had suffered heart attacks and was under treatment for heart attacks before it wrote the policies of insurance in suit.

The burden is upon the plaintiff Trawick to show you by a greater weight of the more convincing evidence in this case that Manhattan thus knew the facts of the history of Mr. Trawick with respect to heart trouble before it wrote these policies and that it therefore had no right in law to rely upon the false statements of this insured in this application to the contrary. This is the very heart of this entire controversy between these parties. This is the only disputed issue of fact that you are called upon in this case to decide, that is to say as to whether or not under all the facts and circumstances this insurance company did or did not rely or have any right to rely upon these false answers of Mr. Trawick in this application.

\* \* \* \* \* \*

. . . if you find from a preponderance of the evidence that this insurance company legally knew these false answers in this application to be untrue but they nevertheless agreed to and did write these policies of insurance on Mr. Trawick's life then it would be your duty to return a verdict in this case for the plaintiff, Mrs. Trawick. This is basically and essentially the only matter presented to you for your decision under the evidence and law in this case.

The court submitted the case on a general verdict and special interrogatories under Rule 49, Fed.R.Civ.P. We set out in the margin the special interrogatories, each of which correctly framed the issue in terms of notice prior to issuance of the policies and each of which the jury answered "yes." [3]

---

3. No. 1: Before the policies were issued, did the insurance company have information in its possession from which it knew, or from which it should have

■ We do not suggest that in every instance reargument should be denied to the party which has requested an erroneous instruction that has been promised but not given (or given and withdrawn). Rather we recognize an appropriate range of discretion for the trial judge to do what justice requires in the circumstances. Under the circumstances of this case we will not reverse a second jury verdict for the plaintiff on the basis of a claim that the trial judge abused his discretion in denying reargument. A ruling to the contrary would have been much closer to an abuse of discretion. In circumvention of the central point of our previous decision, Manhattan had sought and secured a patently incorrect advantage embraced in a misleading instruction. When the matter surfaced the insurance company hung on to its advantage with no effort to correct the error it had induced. It lost its advantage only when the error came to the ultimate—and intended—fruition in the court's oral charge and plaintiff objected to it, and even then defendant opposed correction.[4]

An additional reason for affirmance is the action of the trial judge in denying the motion for new trial, one ground of which was the denial of reargument. The trial judge made clear in the record his opinions that defendant should not be liable, that under no circumstances should plaintiff recover, and that the prior opinion of this court was erroneous. In his order denying the motion for new trial he said so repeatedly and to the extent of several pages. He stated that he allowed the verdict to stand only because our prior opinion concerning actual or constructive notice of the hospital records was the law of the case, though to him erroneous. Under these circumstances there is unusually strong force to the trial judge's rejection of the reargument point, in which he concluded that defendant's reargument contention had no merit and that further argument from defendant "could not possibly do aught but worsen its position."

Affirmed.

CLARK, Circuit Judge (dissenting):

I respectfully dissent and at the very outset must acknowledge that this is the type of case which rarely justifies such action, let alone a disagreement of this length. Yet with utmost deference to

---

known, that Harrison Trawick had falsely answered question 7(e) in the application when he denied having had, and having been treated for, chest pain and shortness of breath?

No. 2: Before the policies were issued, did the insurance company have information in its possession from which it knew, or from which it should have known, that Harrison Trawick had falsely answered question 7(g) in the application when he denied that he had, and that he had been treated for coronary artery disease or any other heart condition?

No. 3: Before the policies were issued, did the insurance company have information in its possession from which it knew, or from which it should have known that Harrison Trawick had sustained a heart attack?

No. 4: Before the policies were issued, did the insurance company have information in its possession from which it knew, or from which it should have known that Harrison Trawick's two brothers died of heart attacks?

4. *Compare* Alabama Great Southern R. Co. v. Johnson, 140 F.2d 968 (CA5, 1944). Defendant requested an instruction which was erroneous. The court refused it but included its language in the general charge. On objection by defendant to that portion of the general charge, the court declined to correct it on the ground that defendant had initiated the idea. This court reversed, pointing out that it was wholly untenable for the court to adhere irrevocably to an erroneous instruction so that it could not "on second and better thought correct it." In dictum, the court stated that even if the written request had been marked "Given" defendant could have timely brought the matter to the attention of the court, confessed error, and obtained a curative instruction. 140 F.2d 972. The present defendant did not bring the matter to the court's attention, did not confess error, and opposed any correction but, nevertheless, insists that the court was required to allow it to argue further.

my brothers and to the learned trial judge, my study of this appeal has left me with a deep and abiding conviction not only that the Mississippi law governing the waiver of fraud was wrongly applied on the retrial of this case, but also that the factual and procedural issues discussed in Part II of Judge Godbold's opinion are incorrectly perceived and improperly resolved.

## I.

The course of my reasoning begins with a reminder that the policies of insurance which this decision requires be paid were procured by Trawick's false and fraudulent answers to critically material questions concerning his health. The sole jury issue was whether Manhattan agreed to write these policies despite knowledge of the false answers.

Similarly I would call to the reader's mind now, the prior opinion rendered by this court in this action (hereinafter *Trawick I*). There the court found substantial evidence had been introduced indicating that Manhattan had actual knowledge of Trawick's misrepresentation and therefore reversed the trial court's grant of a judgment for Manhattan notwithstanding a jury verdict in favor of Mrs. Trawick. In an alternative holding, *Trawick I* ruled that substantial evidence existed to support a finding of constructive knowledge of Trawick's medical history and that such constructive knowledge operated as a waiver of the fraud.

In discussing constructive knowledge, *Trawick I* stated:

This court has held that if an insurer chooses to make an independent investigation of an applicant and if the circumstances are such that it is in a position to ascertain the facts by a reasonable search, then the insurance company cannot avoid liability by pleading reliance on the insured's application. Apperson v. United States, [318 F.2d 438 (5th Cir. 1963)]; New York Life Insurance Co. v. Strudel, 5 Cir. 1957, 243 F.2d 90. Since the de-

fendant in this case conducted an independent investigation and "ought to have known of the facts, or, with proper attention to its business, would have been apprised of them, it has no right to set up its ignorance as an excuse." Knights of Pythias of the World v. Kalinski, 1896, 163 U.S. 289, 298, 16 S.Ct. 1047, 1051, 41 L.Ed. 163.

While I agree with the trial judge that Mississippi law does not make the mere act of undertaking an independent investigation a bar to the assertion of fraud as a defense, I do not agree with his view expressed on remand that *Trawick I* declared this to be the Mississippi rule.

Some of the dicta in *Trawick I* is frankly troublesome in its breadth; however, the decisional portion of that opinion does not impinge on the well-established waiver test enunciated by the Supreme Court of Mississippi. A "waiver" is an intentional relinquishment of a known right, and is a voluntary act. It must be predicated upon knowledge of the existence of a right and an intention to relinquish it. Supreme Lodge K. P. v. Quinn, 78 Miss. 525, 29 So. 826 (1901). Though waiver is sometimes confused with the broader doctrine of estoppel and some courts have declared that the two concepts are synonymous, Mississippi has consistently recognized the established common-law distinction between the two. Casualty Reciprocal Exchange v. Wooley, 217 So. 2d 632 (Miss. 1969); *see also* Stonewall Life Insurance Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932). *See generally* 16A Appleman Insurance Law and Practice § 9086 (1968).

Apperson v. United States Fidelity & Guaranty Co. correctly stated the Mississippi rule thus:

The mere fact that the insurer makes an independent investigation in order to test the truth of the representations made by the applicant does not absolve the applicant from telling the truth nor lessen the right of the insurer to rely upon his representations, unless the investigation either disclos-

es the falsity of the representations or discloses facts which would put a prudent person on further inquiry.

318 F.2d 438, 441 (5th Cir. 1963) (footnotes omitted).

To read the dicta in *Trawick I* as holding that an investigating insurance company is bound by all that it could reasonably have discovered, is to create an improper inconsistency with *Apperson*. *Trawick I* does no more than bind an insurance company to know what its files contain.[1]

The first sentence of the above-quoted paragraph from *Trawick I* cannot be read in isolation. This is readily apparent if it is compared with the cases cited as its antecedents. Then, too, if one reads Knights of Pythias of the World v. Kalinski, *supra*, which is cited to support the second sentence quoted here, it will be found that *Kalinski* expressly recognized the quoted rule to be inapplicable where the relevant facts "are peculiarly within the knowledge of the assured," as they most certainly were in this case. In such a case, the Supreme Court stated, waiver would be found only "[where] the facts constituting a forfeiture are known to the company. . . ." 163 U.S. at 298, 16 S.Ct. at 1051.

The problem for the present appeal which all of this leads up to is this: on remand the trial judge depended upon this dicta in *Trawick I* to authorize the following instruction to the jury.

> You are further instructed that as a matter of law if you find from a preponderance of the evidence that the defendant insurance company chose to make an independent investigation of the medical history of the applicant Harrison Trawick and if the circumstances were such that the company was in a position to ascertain the facts by a reasonable search as to the insured's heart trouble before issuing the policies, then the insurance company cannot avoid liability by pleading reliance on the insured's medical application.

This instruction, to which Manhattan duly excepted, was such a clear and patent misstatement of the applicable law, and to my mind, one so significant that this case should have remanded for yet another trial.[2]

## II.

No pragmatic mind should discount the force of two jury verdicts for the plaintiff. Here, however, these laymen not only were given an erroneous crucial instruction of law to govern the issue they were to resolve, but also their already misguided task was beset by an additional confusing circumstance which forecloses my ability to give their resolution its usual sanctity. The lawyer's arguments miscarried over a vital fact point and no corrective reargument was permitted.

What the jury should have been requested to resolve was: Did the insurance company have actual knowledge of Trawick's actual physical condition, or did it have information which would have moved a reasonable person to make additional inquiry? As shown, they weren't. To make a bad matter even worse, a sensitive issue of proof as to Manhattan's constructive knowledge was improperly argued to the jury because the judge changed his mind after argu-

1. I read the majority opinion here to construe *Trawick I* as similarly limited.

2. I do not wish to be critical of the trial judge. He was not misled as to the law he was *Erie*-bound to apply. He acted as he did from an obeisance to his concept of duty to apply the principles he read *Trawick I* to announce. In his order denying Manhattan's motions for a new trial or judgment nov, the court stated:

> With great deference, the panel announced a principle which is not compatible with Mississippi jurisprudence . . . I submit to a participation in this unjust verdict only by direction, and not in conformity with my own convictions as to the law and the facts to the contrary.

ment as to an instruction and refused to permit clarification.

As the opinion in *Trawick I* points out, the record disclosed that before Manhattan wrote the insurance, it had four electrocardiograms (together with medical evaluation from Trawick's physicians) and reports which suggested heart impairment and which stated that Trawick had been refused insurance by another company. The proof also showed that Manhattan issued Trawick's policies at an increased premium, which, according to Manhattan, was intended to compensate the company only for the possible milder heart condition indicated by the information it had obtained. These same matters recurred in the proof put before the second jury. The crucial factor relevant to this factual issue—which I consider to be the key to the right-to-reargue point of this appeal —was whether, prior to its issuance of the policies, the insurance company had obtained records from St. Dominic's Hos-

pital which divulged Trawick's hospitalization for a serious heart disease in 1963. The plaintiff's contention that the insurance company had so obtained the St. Dominic's records was predicated entirely on one interrogatory and answer. The question and answer are recopied in the margin.[3] This whole question and answer with its limited inquiry and express disclaimer provides scant support for the proposition that Manhattan had knowledge of a heart condition prior to issuance of the policies. The plaintiff, however, asked the jury to draw the inference of the requisite knowledge from the first part of the answer. Pointing to the statement of Manhattan that it had received some information from St. Dominic's prior to the issuance of the policies, plaintiff argued that if Manhattan had been furnished any of St. Dominic's records pertaining to Trawick it most probably would have been furnished all such records pertaining to any treatment Trawick had received at the hospital,

---

3. It is necessary to make profert of the full text because I cannot agree with Judge Godbold's paraphrase of the interrogatory which, with the single portion of Manhattan's response he quotes, forms the lynch pin of his reasoning on this point. Interrogatory No. 7:

Did Mr. Harrison Trawick execute medical authorization forms to allow the Manhattan Life Insurance Company, its agents or representatives to obtain past medical data from other sources prior to issuance of policies in question; if so, give the answers to the following:
(a) When was such authorization executed and delivered to the defendant or its agents?
(b) Give the names of all medical doctors and hospitals that furnished the defendant corporation past medical data on Harrison Trawick.
(c) Give the dates that such information was received in the defendant corporation.
(d) Give the names and addresses of any other persons, agencies, institutions or corporations from which the defendant corporation obtained data or information on Harrison Trawick's past history.
(e) Attach a copy of such authorization to your answer to these interrogatories.

(f) Give the dates that such additional information was received by the defendant corporation.
(g) Please attach full copies of all data and reports received by the defendant in reference to .interrogatories 7(b) and 7 (d) above including hospital records and doctors' reports.
(h) Attach copies of all written requests made by Manhattan Life Insurance Company, its agents, employees or officers for past medical reports and medical history on Harrison Trawick prior to date of policies in question.
Manhattan's original answer:
*Interrogatory No. 7.* Harrison H. Trawick executed a medical authorization in the usual form on December 5, 1967. The defendant secured information relative to Mr. Trawick's past medical history from Dr. Gayden Ward, Dr. Temple Ainsworth, St. Dominic Hospital, Retail Credit Company and the Medical Information Bureau before the policies were issued, but the defendant did not know until after the death of Harrison H. Trawick that he had been confined in St. Dominic Hospital and the University Hospital in 1963 or that there had been a diagnosis of coronary artery disease and angina pectoris.

which would include those pertaining to his 1963 heart condition.

Manhattan claimed that the portion of this answer stating that it had received any information from St. Dominic's prior to the issuance of the policies was the result of clerical error. Before the second trial the lower court permitted Manhattan to amend the answer to read as follows:

Harrison H. Trawick executed a medical authorization in the usual form on December 5, 1967. The defendant secured information relative to the past medical history of Harrison H. Trawick from Dr. Gayden Ward, Dr. Temple Ainsworth, Retail Credit Company and the Medical Information Bureau before the policies were issued, but none of those persons or firms informed the defendant prior to the death of Harrison H. Trawick that Mr. Trawick had been confined in St. Dominic [sic] Hospital in 1963 or that there had been a diagnosis of coronary artery disease and angina pectoris.

During the course of the second trial the court also permitted the plaintiff to read Interrogatory 7 and Manhattan's original answer, as set out in Footnote 3 above, into the record.

Manhattan's requested jury instruction, which the majority recites, sought to have the court rule that the original answer, and plaintiff's suggested inference therefrom, did not create a jury question as to whether Manhattan had obtained the St. Dominic's Hospital records indicating serious heart trouble. Pursuant to Fed.R. Civ. P. 51, the trial judge informed counsel before they argued to the jury that the requested charge would be given. Manhattan's argument totally relied upon the premise that the court's promised action would eliminate this issue from jury consideration. After both parties concluded their argument, the trial judge did indeed charge the jury in the language of the requested instruction. After plaintiff objected, the court called the jury back

and gave them a supplemental charge which expressly withdrew this instruction and told the jury that it would be open to them to decide whether Manhattan had any information from St. Dominic's Hospital. Counsel for Manhattan made timely and clear requests to be allowed to recast its argument to the jury to accommodate this newly-submitted question, pointing out that the sole basis for making a fact issue of this matter —the original interrogatory answer— had been strongly argued to the jury by plaintiff and had been countered in defendant's argument solely by its response that the court's instructions would inform the jury that there was no valid evidence to support this contention. The trial court acknowledged that counsel had a valid expectation of receiving the requested charge, but nevertheless denied reargument.

It is wrong to make the decision turn upon the propriety *vel non* of the defendant's requested instruction, nor should it be dependent upon whether the judge should have changed his mind.

My enduring view that this case is wrongly decided comes from a wholly different analysis of the purpose of reargument. The question goes beyond basic fairness to a party or attorney in the trial's conduct to the integrity of the jury function. When a major premise of defendant's original argument has been made in reliance on the trial court's expressed intention to give a certain instruction and the court determines not to so instruct, more than just professional embarrassment is involved. Argument of counsel plays an important part in the jury's role in our adversary system of justice. When it miscarries, the jury is entitled to corrective action, else its ability to do its duty is impaired. It did not get that benefit here. To allow jury resolutions to stand, knowing they are made on faulty presentations which confuse rather than clarify the question, is altogether wrong.

Though I accept the majority's explication of the applicable law on the right to reargue, I cannot agree that this law

leads to an affirmance of the trial court's denial of reargument. I understand Judge Godbold to hold that reargument was properly denied since, first, the instruction was misleading in ruling as a matter of law that the insurance company had not received the records *before Trawick's death,* rather than instructing that the records were not obtained *before issuance of the policy,* and, second, the requested charge was not even arguably correct.

### A.

*Was the requested charge misleading?* My analysis of this least significant of the two bases for the majority decision begins with a difficulty—I don't agree that the charge was "predicated on an erroneous statement of the evidence." Judge Godbold apparently attaches considerable significance to the fact that the requested instruction would have charged the jury that Manhattan had not obtained the records *at the time of Trawick's death.* The relevant question, of course, was whether Manhattan had obtained the records *at the time the policies were issued.* Since Trawick died after the policies were issued, if Manhattan had not obtained the records at the time of Trawick's death, then *a fortiori* it had not obtained the records when it issued the policies. Moreover, there was no evidence whatsoever, and neither party ever contended, that Manhattan obtained the records during the relatively short period between the issuance of the policies and Trawick's death. Thus, even if the instruction as written is technically incorrect as to this point—a proposition which is by no means clear—there is no possibility at all that this time difference could have misled the jury. This assumption may be most significantly supported by the fact that the point was never mentioned by the parties here or below, when the instruction was requested, after the charge was given, or after it was withdrawn. Had the point been noted or deemed significant, it is obvious the instruction would have been forthwith corrected. Under these circumstances I am persuaded that the confusion which the majority finds *sua sponte* is really immaterial.

One other facet of the majority's "misleading" assumption must be discussed. The amended answer to the interrogatory is interpreted as stating that Manhattan never received the St. Dominic's records "at all" and thus is inconsistent with the oral testimony of the insurance company's representative: "We did not receive the records before issuance of the policy." Reading the complete interrogatory reveals that at least plausibly (and to my mind, most obviously) it inquired whether Manhattan received "past medical data" pertaining to Trawick "prior to the issuance of policies in question" as a result of the medical authorization form signed by Trawick. Conceding this construction to be reasonable, Manhattan's amended answer merely states that the records were not obtained *before issuance of the policies.* This is consistent with the rest of Manhattan's evidence. To bolster my position I note that the interpretation which the majority places on the interrogatory and the amended answer is not even shared by the plaintiff, whose brief contains the following language:

> After this case was remanded to the District Court for a new trial, the company sought and received permission to amend its original interrogatory answer to delete St. Dominic's Hospital as a source from which it had received medical information on the insured prior to issuing him the policies.

With deference, I conclude that the majority's conclusion that there existed any conflict whatsoever between the *amended* answer and the oral testimony of its servant is wrong.

### B.

*Was the defendant's requested instruction so clearly erroneous and patently incorrect as to bar curative argument?* The main support for the ma-

jority's conclusion that the jury was not entitled to supplementary argument is the premise that the "requested, and promised, instruction was not even arguably correct factually. . . . There was no rational basis on which defense counsel could have thought that it was incorrect." Even conceding that the requested instruction should not have been given, I must insist that the point is not so clear that Manhattan should have been bound to assume that it could not have in any event prevailed. While the retrial evidence was substantially similar to that adduced at the first trial, it did differ in some particulars. In addition, the first opinion of this court did not even deal with whether or not the original answer was admissible as substantive evidence or only for the purpose of impeachment. These two factors combine in my mind to make a plausibly arguable question as to the propriety of the requested instruction. Hope springs eternal, not only in the human breast but also in the corporate brain. That this hope was not mere fancy is made clear by the fact that the trial judge, thoroughly familiar with this court's prior opinion in this case, thought enough of the argument to initially rule in the defendant's favor and actually gave the instruction which was later withdrawn. All of this is to say that while the defendant's requested charge may have been erroneous, it was not so "clearly erroneous" or "patently incorrect" that it calls for penalizing the jury's comprehension of its task by decreeing a forfeiture of the right to correct an inapposite argument resulting from reliance on the court's indicated ruling.

> The majority opinion goes on to say:
> When the matter surfaced the insurance company hung on to its advantage with no effort to correct the error it had induced. It lost its advantage only when the error came to the ultimate—and intended—fruition in the court's oral charge and plaintiff objected to it, and even then defendant opposed correction.

and in a footnote adds:

The present defendant did not bring the matter to the court's attention, did not confess error, and opposed any correction but, nevertheless, insists that the court was required to allow it to argue further.

It is undisputed that the counsel for the defendant requested additional time to argue immediately after the court agreed to withdraw the instruction. Contrary to any implication which might be drawn from the majority opinion, this was the first time that the situation requiring corrective action surfaced.

Moreover, there is no prerequisite to the right to additional argument that counsel must confess error. Impact upon the jury is the polestar. Of course, the Alabama Great Southern R. Co. v. Johnson case, cited in the majority opinion at Note 4, involved the very different situation in which a defendant sought to change his position. In such a case, where the same party first moves the court to some action and then asserts that action as error, it is altogether proper to require the party to confess error in order that he not be allowed to reap an advantage from taking inconsistent positions. Here, Manhattan has never adopted inconsistent positions— the essence of the invited error doctrine —but rather has steadfastly and without waiver maintained at all time that there is no probative evidence that it obtained the St. Dominic's records prior to the issuance of the policies. Its claim on this appeal is not predicated on the tria court's acceptance or rejection of its proposed instruction; rather it complains of the trial court's action *after* it withdrew the requested instruction. The spirit of modern federal practice dictates that except in the most unusual circumstances a litigant desiring to further argue to clarify a confusion caused by the trial court's change of mind be permitted to do so and still preserve the charged instruction as an issue for appeal.

Today's decision seriously undercuts the spirit and function of Rule 51 in the scheme of bringing about a fair resolu-

tion of jury issues. The crucial nature of the issue to which the charge was directed, the obvious prejudice suffered by the unintentionally misled attorney, the timely request for additional argument, and the almost minimal inconvenience which the additional argument would have entailed lead me to no other conclusion except that the curative argument should have been allowed.

Either of the two errors would be sufficient to warrant remanding this case for another trial; cumulatively they mandate such action. I would reverse.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

GODBOLD, Circuit Judge:

As one of its points in petition for rehearing Manhattan Life refers to and relies upon part I of the dissenting opinion of Judge Clark. We agree with Judge Clark that *Trawick I* did no more than bind an investigating insurance company to know what its files contain. *Trawick I* is not inconsistent with but wholly accords with Apperson v. USF & G, 318 F.2d 438 (CA5, 1963) and other cases stating the Mississippi rule. What Judge Clark and Manhattan center upon is one portion of the jury charge in *Trawick II* in which the trial judge, using language from *Trawick I*, stated "if the circumstances were such that the [investigating] company was in a position to ascertain the facts by a reasonable search as to the insured's heart trouble before issuing the policies, then the insurance company cannot avoid liability by pleading reliance on the insured's medical application."

Read in context in the *Trawick I* opinion, this language appears to us to have referred to the company's obligation with respect to its own records and not to information that can be ferreted out from the world at large. In *Trawick I* the company took the position that it was not charged with the consequences of information filed away in its own records containing the fruits of its investigation of plaintiff unless plaintiff could prove that the officials of the company had become subjectively aware of the contents of the information. This position *Trawick I* rejected, and properly so.[1]

We did not refer to this issue in the majority opinion on this appeal because it appeared to us then, as it does now, that the "reasonable search" language in the jury charge in the second trial was used in the same context just described. Early in his charge the District Judge said this:

Now under these circumstances and conditions the sole and only question for you to decide in making your verdict in this case is as to whether or not Manhattan knew or had the facts in its possession from which it should have known that the insured Mr. Harrison Trawick had suffered heart attacks and was under treatment for heart attacks before it wrote the policies of insurance in suit.

In the sentence immediately following the "reasonable search" language the court instructed:

You are further instructed that the defendant is charged with knowledge of what appears in its own records and the fact that substantial information concerning the insured's heart condition was contained in the defendant

---

1. This court said:

"These precedents do not hold that an insurance company has the right to armor itself with a collation of medical facts and then employ that armor as a defensive weapon when a claim is made upon it. Rather they support our conviction that the defendant should be charged with knowledge of what appears in its own records. Therefore,

the fact that substantial information concerning the insured's heart condition was dungeoned in Manhattan's files and not proven to have been read by human eyes or digested by medical experts is no escape route to evade liability."

Trawick v. Manhattan Life Insurance Co., 447 F.2d 1293 at 1296 (CA5, 1971).

company's file, if so, and was not proven to have been read or digested by the officers or employees, that will not prevent the company from being charged with knowledge of its contents.

The overall context of the charge is consistent with the factual structure of the second trial, a crucial issue of which was, as explained in the majority opinion on this appeal, whether Manhattan Life did or did not have in its files certain hospital records. The trial judge made clear, as *Trawick I* had done, that the insurer was charged with the information contained in those records if they were in its possession.

Thus Manhattan could not have been injured by the "reasonable search" language. The proof of the pudding, if any more be needed, is that four special interrogatories were addressed to the jury [2] and all four asked whether Manhattan Life "[had] information in its possession" from which it knew or should have known about Trawick's condition. All four were answered "Yes." Thus it is no more than an abstraction to urge that the general verdict was based on a misapprehension by the jury that Manhattan was charged with knowledge of what a "search" of the world at large would have revealed as to Trawick's condition, when in response to specifically targeted questions the jury had answered that Manhattan had the information in its own files.

The petition for rehearing is DENIED, and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

CLARK, Circuit Judge (dissenting in part):

I am pleased with the panel's reassurance that neither *Trawick I* or *Trawick II* misconstrued the law of Mississippi on the limited extent of knowledge charged to an insurer when it undertakes to investigate an applicant. However, I cannot accept the majority premise which is of most immediate importance to the litigants at bar—that the district court did not misconstrue our opinion in *Trawick I*. I remain convinced that the trial of this cause now on review was conducted by a judge who felt constrained to apply an improper view of Mississippi law and therefore that the result of this trial was unjust. I respectfully dissent from the denial of rehearing for those reasons pertinent to this position which are set out in my previous dissent herein.

---

2. Appearing in footnote 3 of the majority opinion.